STATE v. FRANCIS J. CURRAN, FRANCIS J. MAGUIRE and IRA F. JONES, JR.

(*October* 3, 1955.)

RICHARDS, P. J., TERRY and CAREY, J. J., sitting.

*Irving Morris* and *John M. Bader* for Petitioners.

*Stephen E. Hamilton, Jr.,* Deputy Attorney-General, for the State.

Superior Court for New Castle County.

RICHARDS, P. J.:

We are unable to find any justification for the contention that the trial was improperly conducted in a manner which was prejudicial and unfair to the defendants, and in violation of certain constitutional guarantees for the preservation of individual justice, liberty and due process of law.

The defendants Jones and Maguire were represented by counsel of their own selection, H. Albert Young and David J. Reinhardt, Junior, both of whom were experienced trial lawyers, and the Court appointed Leonard G. Hagner, an experienced trial lawyer and former Deputy Attorney General, to represent the defendant Curran.

Counsel for the defendants requested, that while the jury was being drawn to try the case, when the jurors called were being examined upon the *voir dire,* that they be allowed to ask in addition to the usual questions prescribed by the statute, certain other questions in order to determine whether they were entitled to challenge for cause. After a conference, additional questions were agreed upon to be asked both by the State and the defendants. This was unusual at that time in the trial of a capital case in this State and had never been allowed before except in one or two instances. The trial lasted seven days and counsel were given ample opportunity to examine and cross-examine the witnesses. In addition they were allowed to take any course in conducting the defense permissible under the constitution and laws of this State.

This contention was not supported by counsel for the defendants in their briefs or enlarged upon at the hearing.

It appears from the evidence admitted at the trial, from the depositions taken and from the testimony taken at the hearing on this motion, that the defendants Jones and Maguire signed two separate pieces of paper, designated as statements, only one of which was introduced in evidence at the trial. The evidence discloses that the original statements of these two defendants were taken and typed by Detective John Rodenheiser at the Police Station. Finding some typographical errors and misspelled words in these original statements, Detective Rodenheiser had them re-typed by Patrolman Nagle and signed by Jones and Maguire, Maguire being down in the cell block at the time he signed it. After these re-typed statements had been signed the original statements signed by these defendants were

destroyed by Detective Rodenheiser. During his testimony at the trial Detective Rodenheiser failed to state that he destroyed the original statements which he took from Jones and Maguire. In fact, he testified that he took only one statement from these defendants, which was the one introduced in evidence. The contention is made by the defendants that this testimony of the detective was not only untrue and misleading to the jury, but prejudicial to their rights and contributed to their conviction. The defendants further contend, that the second statements were not the same as the first statements in that they contained the word "moan" or "moaning" which did not appear in the first statements.

The State contends that the defendants are confusing two statements with two pieces of paper; and that the second piece of paper signed by the defendants was simply a re-typed copy of the original statement signed by the defendants which was the same as the first.

There seems to be no doubt that two statements were signed by the defendants Jones and Maguire, or that the second statements were a re-typed copy of the first. It is true that Detective Rodenheiser testified at the trial that they signed only one statement. The defendants testified that they signed two statements and contradicted the testimony of Detective Rodenheiser. The defendants also testified that the statements introduced in evidence were not the same as the first statements they signed because they contained the word "moan" or "moaning" which was not in the first statements.

This contention that the statements introduced in evidence were not the statements originally signed by the defendants, and that they were not the same as the original statements because they contained the word "moan" or "moaning", is the most important contention made by the defendants.

All of the testimony in reference to the statements, the number signed, where they were signed, when they were signed and what they contained was before the jury and was doubtless

given consideration. Each one of the defendants contradicted the officers who testified, including Detective Rodenheiser, and insisted that more than one statement was signed by them. They testified positively that the statements admitted in evidence were not the original statements signed by them and contained different language. The defendant Curran when asked if the prosecuting witness, Jean Igle, was making a noise, replied that she was making passionate gestures. All of the defendants testified that they heard a woman call from a nearby house, to leave that girl alone or she would call the police, or words to that effect. The operator at the switch board in the Police Station testified that a woman called there and reported the noise in the park. What this noise consisted of does not appear. Whether Jean Igle was actually moaning does not appear. The Jury, however, had this testimony of noise in park before it in considering whether the defendants used the word "moan" or "moaning", in their statements to the officers concerning what took place in the park.

The fact that the original statements were torn up by Detective Rodenheiser after they were re-typed was not brought out at the trial, and did not become known until it was brought out in the depositions and the evidence taken at the hearing on this motion. The only explanation given by Detective Rodenheiser for having the statements taken and written by him re-typed, and destroying the originals, was his desire to have his work present as good an appearance as possible, and his lack of experience in work of that nature.

This information that the original statements taken and written by Detective Rodenheiser, were destroyed by him after they were re-typed, was the only information in reference to the statement made by the defendants which was not brought out before the jury.

This is not sufficient to justify this Court to grant the relief prayed for in this motion.

All of the material evidence in connection with the statements of the defendants was before the jury at the time it rendered its verdict.

The case of *Equitable Trust Co. v. Gallagher, Del.,* 102 *A.* 2d 538, is not applicable to the case now before the Court.

The contention that the police officers refused to accept and act on information of eyewitnesses to the alleged crime, evading their duty to ascertain all available evidence which could have been presented to the Grand Jury, is without merit in this proceeding.

The presentation of the charges against the defendants before the Grand Jury, not only occurred before the case was tried in this Court, but before the Court acquired jurisdiction over it. The Attorney General determines the witnesses to testify before the Grand Jury in support of indictments presented by him. He also determines the witnesses to testify for the State in criminal cases prosecuted before this Court. The three eyewitnesses referred to, namely, Schuler, Masten and Fahey, who were also in the automobile with the defendants on the evening in question, were called as witnesses for the defendants and the jury had the benefit of their testimony.

The further contention is made, that the Court failed to define the crime of rape to jury in the manner required by law. What particular portion of the law in reference to rape the Court failed to charge on, or in what respect the charge failed to define the crime of rape as applied to the particular case, is not stated. The charge is supported by numerous charges which have been made in this State in prosecutions for rape.

The draftsmen of the Rules of Criminal Procedure for the Superior Court, made the following comment in reference to Rule 35(a):

"Rule 35(a) is a combination of the first sentence of Federal Rule 35 and Uniform Rule 44 and amplifies and enlarges upon the Federal Rule 35. The adoption of the draft will pro-

vide for relief now obtainable by writ of Error Coram Nobis or Habeas Corpus. The failure of the Federal Rules to provide for such relief has been criticized".

■ The rule does not give one who has been found guilty of a crime the right to have the case tried over again. It is intended to grant relief when the substance of a fair trial has been denied followed by the imposition of sentence. 4 *Barron Federal Practice and Procedure* (Supp.) Sec. 2306.

It was held in the case of *In re Shepherd*, 1 *Cir.*, 195 *F.* 2d 157, a motion which alleged that a plea of guilty had been based upon a confession obtained unlawfully, and that movant entered his plea of guilty under misapprehension, did not state a proper case for relief under Federal Rules of Criminal Procedure, rule 35, 18 *U. S. C. A.*

The movants have failed to show that sentence was imposed on them in violation of the constitution and laws of this State or the United States, or that the court imposing such sentence was without jurisdiction to do so, or that it was in excess of the maximum sentence authorized by law or is otherwise subject to collateral attack.

This being the case the motion must be denied.

CAREY, J., (concurring).

In my opinion, something more needs to be said concerning the testimony of Detective Rodenheiser at the original trial. Although he was on the stand for a considerable length of time, he said nothing about the fact that the original written statements were destroyed after they had been retyped and that the papers actually put into evidence were the second ones not typed by him but signed by Jones and Maguire. He seeks to excuse this by now saying that he thought the matter was unimportant, and that the proper questions were not asked of him so as to give him a chance to tell about the episode. A witness, of course, has no business deciding upon the importance of any particular question or line of testimony; his sworn duty is to answer the questions put to him truthfully and fully.

As to the suggested excuse that no opportunity was given him to explain this matter, it seems plain to me that there were at least three places in the questioning when a full and truthful answer would necessarily have included this information. I quote only one of those instances, which occurred during examination by Mr. Young:

"Q. I hand you State's Exhibit No. 11. Is that the statement that you took from Ira Jones? A. It is.

"Q. At what time? A. At 2:45 A.M., starting at 2:45 A.M.

"Q. Did you type it yourself? A. I did."

The officer now admits under oath that he did not type this piece of paper, that the one he typed was destroyed, but that this particular exhibit was an exact copy of the one he did type. I cannot understand how he could possibly have understood the questions above quoted to refer to anything other than the piece of paper that was then shown to him and identified by him. Moreover, while this witness was still on the stand, a lengthy colloquy took place between counsel and the Court, the nature of which could only indicate to him that the matter was of importance and so considered by counsel. Immediately after he left the stand, a recess was taken. Notwithstanding this, he admittedly made no effort to tell the Attorney General or any one else about the retyping episode.

Regardless of the category into which this testimony should be placed, nevertheless the witness was certainly guilty of conduct of a censorable character, regardless of its actual effect upon the outcome of the trial. If we pass this sort of thing in silence, we may be thought to give our sanction to such conduct.

 This does not mean that petitioners are entitled to a new trial because of that evasive testimony of this witness. To warrant such relief under Rule 35(a) there must be a showing that a retrial could reasonably be expected to result in a different verdict and judgment. *United States v. Bowen, D. C.*, 94 *F. Supp.*

1006, affirmed, 5 *Cir.*, 192 *F.* 2d 515, *certiorari* denied 343 *U. S.* 943, 72 *S. Ct.* 1036, 96 *L. Ed.* 1348, rehearing denied 343 *U. S.* 988, 72 *S. Ct.* 1079, 96 *L. Ed.* 1375; *United States v. Moore,* 7 *Cir.*, 166 *F.* 2d 102. Under all the evidence in this case, no such likelihood appears. The only criticism which petitioners have ever made of the statements admitted into evidence is that they never used the word "moaning". The only basic issue in the case was whether the victim consented. We know from other evidence presented that she was making some kind of noise, which must have been the result of fear or pain on her part; otherwise there would have been no phone call to the police station and there would have been no woman yelling to these boys to leave the girl alone. Accordingly, it makes little difference whether the proper word was "moaning" or something else. In short, I cannot believe that there would have been any difference whatever in the outcome of the trial had the full facts concerning the aforesaid retyping been disclosed to the jury.

I, therefore, concur with the result reached in Judge RICHARDS' opinion. I am authorized to say that Judge TERRY concurs with what has been said herein.