**Francis J. CURRAN, Francis J. Maguire and Ira F. Jones, Jr.**

v.

**STATE OF DELAWARE, Appellant.**

**No. 12397.**

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1958.

Decided Sept. 29, 1958.

---

3. Fenwick v. Unemployment Compensation Commission, 1945, 133 N.J.L. 295, 44 A.2d 172, at page 175.

Frank O'Donnell, Chief Deputy Atty. Gen., of Delaware (Joseph Donald Craven, Atty. Gen. of Delaware, on the brief), for appellant.

Irving Morris, Wilmington, Del., for appellees.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The following pertinent facts, succinctly stated by Mr. Chief Justice Southerland writing for the Supreme Court of Delaware, give much of the background necessary to understand the case at bar:

"At some time after midnight on October 30, 1947 Jean Igle, 23 years old, unmarried, was waiting for a bus near the corner of Fourth and Union Streets in the City of Wilmington. An automobile passed and stopped. * * * [Curran, Jones and Maguire] were in it. Curran got out, approached the girl, and asked her for a match. She had none, and he offered to escort her home. She went with him. They walked west on Fourth Street, turned north (away from the direction in which lay her home), and went to a public park which extends for two blocks, from Fourth to Sixth Streets, along a railroad right of way. They entered the park. While there Curran attacked her. Maguire and Jones had followed them. All of them, she testified, ravished her. Two witnesses living in nearby houses heard screams. A woman in another nearby house called out to them: 'You had better leave that girl alone or I will call the cops.' At about a quarter of two a telephone call from an unknown woman was received at police headquarters. She said: 'Please send the police

quick, there is a girl screaming down in the Park on Ferris Street, and I think she is being raped.'

"After the woman had called out and threatened to call the police, Maguire and Curran left. Jones walked with the girl to Fourth Street, where police officers, in two police cars, found them. The girl, as soon as she was out of Jones' presence, made a complaint of rape.

"Jones was taken to the police station and the girl was sent to a hospital and examined. The medical and other testimony relating to her condition left no doubt that she had been subjected to brutal violence, and that sexual intercourse had taken place.

"Maguire and Curran were arrested shortly thereafter.

"At the police station all three men were questioned by police officers and eventually signed statements. None of these statements admitted any violence. All three statements asserted, or tended to show, that the girl had consented to intercourse.

"The jury found all the defendants guilty, and recommended them to mercy. They were sentenced to life imprisonment, the minimum term then permitted by the statute. Each defendant was represented by experienced counsel. No appeal was taken." [1]

The investigation of the crime—at least in its early stages—was conducted by Detective John A. Rodenheiser, Detective Charles F. McCool, Sergeant John Emering, assisted by Officers Nagle, Mazewski, Delloso, and other members of the Wilmington Bureau of Police. The statements, referred to in Mr. Chief Justice Southerland's opinion quoted above, signed by the three defendants, Curran,

Jones and Maguire, were admitted in evidence at their trial in the Court of Oyer and Terminer, respectively as State's Exhibits, Nos. 10, 11 and 12. Curran's statement and that of Maguire were admitted without objection. Jones' counsel objected to the admission of his client's statement and examined Rodenheiser on voir dire, attempting to show that it had been procured by coercion. During the course of the voir dire examination [2] Rodenheiser was asked whether State's Exhibit No. 11 was the only signed statement procured from Jones. Rodenheiser replied that it was the only one.[3]

Curran's statement, State's Exhibit No. 10, admitted that he had twice attempted to have intercourse with the girl but that his attempts were unsuccessful. The statement contained the sentence: "This girl was moaning. * * *" Jones' statement, State's Exhibit No. 11, admitted unsuccessful attempts to have sexual intercourse with the complaining witness. It contained the sentence: "The woman was moaning. * * *" Maguire's statement, State's Exhibit No. 12, did not admit any attempt at intercourse by him. The statement contained the two following sentences: "Jones and I stood by and watched Curran on the ground with the woman. I heard the woman moaning 'You're hurting me.' "

The three defendants testified on their own behalf. Curran swore that he did not read his statement, State's Exhibit No. 10, before he signed it. Maguire testified that he "scanned" a statement which he signed. It does not appear whether or not the document which he scanned and signed was State's Exhibit No. 12. Maguire testified that he did not even scan a statement which he claimed to have signed in the afternoon and which may or may not have been State's Exhibit No. 12. Jones gave no evidence as to reading or scanning State's Exhibit

1. Curran v. State, 1956, 10 Terry 587, 588–589, 49 Del. 587, 588–589, 122 A.2d 126, 127.

2. The jury not being present.

3. Rodenheiser enlarged upon this by testifying in rebuttal that the single statement was signed in triplicate.

No. 11, or any other statement. Each of the defendants denied that they had ever said that the complaining witness was "moaning".

All three defendants denied the accuracy of the statements in evidence. They also insisted that there were other statements signed by them and given to the police. But Detective Rodenheiser, called as the last witness at the very end of the State's case, in rebuttal, swore that Maguire's statement, State's Exhibit No. 12, was the only signed statement given by Maguire to the police. Rodenheiser testified on rebuttal that Jones' statement, State's Exhibit No. 11, was the only signed statement[4] given by Jones to the police. To repeat for the sake of both clarity and emphasis, Rodenheiser swore plainly, positively and unequivocally that the statements of Jones and Maguire, State's Exhibits Nos. 11 and 12, were the only signed statements given by them to the police. The issue of the credibility of the defendants and that of the police was thus sharply before the jury.

It is now clear[5] that a statement other than State's Exhibit No. 11 had been signed by Jones and given to the police. This other statement had been destroyed by the police. It is clear also that the police had taken another statement from Curran before State's Exhibit No. 10 had been signed. According to Officer Nagle, Curran had refused to sign the earlier statement because his name had been spelled "Kern" in it. Nagle testified that a new statement was typed with Curran's name spelled correctly in it and that Curran signed this statement. The original statement testified to by Nagle at no time was produced in evidence. It also appears that Maguire gave the police two statements but it is not clear that both statements were signed. One statement was destroyed by the police. The other statement was signed and is State's Exhibit No. 12.[6]

As to Rodenheiser's veracity, Mr. Chief Justice Southerland said: "The record leaves no doubt that Rodenheiser's testimony was untrue. It is inconceivable to us that he could have failed to understand the point of counsel's questions. His explanation of the matter at the hearing below, which the State attempts to justify, is that there was in fact only one 'statement' because the 'statement' was the substance of what the men said —not the piece of paper, and hence the matter was unimportant. This is mere equivocation. Counsel was entitled to the facts, and entitled to make such use of the facts as he saw fit. We think Rodenheiser's conduct on the stand highly reprehensible. As Judge Carey observed [49 Del. 350, 357, 116 A.2d 782, 786], a witness has no business deciding the importance of any particular question or line of testimony; it is his sworn duty to answer the questions put to him truthfully and fully. This Rodenheiser, an officer of the law, failed to do."[7]

The Supreme Court of Delaware did not characterize Rodenheiser's testimony as perjurious but there can be no doubt that its conclusion was to that effect.

---

4. Copies, of course, aside. See note 3, supra.

5. In 1955, defendants sought correction of the alleged illegal sentencing under Rule 35(a) of the Delaware Rules of Criminal Procedure, and evidence of false and incorrect testimony at the criminal trial was adduced. See note 6, infra.

6. It is not necessary to detail in this opinion the evidence which has accumulated to demonstate the truth of the foregoing. It is set out clearly in the record.

Reference is made to Curran v. Wooley, 1953, 9 Terry 214, 48 Del. 214, 101 A.2d 303, affirmed, 1954, 9 Terry 382, 48 Del. 382, 104 A.2d 771; State v. Curran, 1955, 10 Terry 350, 49 Del. 350, 116 A.2d 782, affirmed 10 Terry 587, 49 Del. 587, 122 A.2d 126, certiorari denied, 1956, 352 U.S. 913, 77 S.Ct. 151, 1 L.Ed.2d 120. See also Deposition of Andrew J. Kavanaugh, Superintendent of the Department of Public Safety of the City of Wilmington, before hearing on Motion on Rule 35(a) of the Delaware Rules of Criminal Procedure. State v. Curran, 1955, 10 Terry 350, 49 Del. 350, 116 A.2d 782.

7. 10 Terry 587, 592–593, 49 Del. 587, 592–593, 122 A.2d 126, 129.

We agree also with the conclusion of the Supreme Court that the phrases in the three statements introduced in evidence that the complaining witness was "moaning" do not possess substantial probative effect on the issue of consent.[8] The two questions on which our decision must turn are, first, whether Rodenheiser's knowingly false evidence kept from the defendants facts which they were entitled to use as they saw fit, and second, whether it so damaged the defendants' credibility on the fundamental issue of consent as to render their trial fundamentally unfair and therefore constitute a denial of due process of law. Bute v. People of State of Illinois, 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986.

■■ In respect to the first question, we state that the trial of a capital case, or indeed any other trial, no longer can be considered properly a game of wits and skill. It is clear that men on trial for their lives are entitled to all pertinent facts relating to their defense and that no witness is entitled to constitute himself the judge of what the court shall hear. As Mr. Chief Justice Southerland stated, counsel for defendants were entitled to the facts and to make such use of the facts as they saw fit. Had Jones'

counsel on his examination of Rodenheiser on voir dire been told that Jones' statement, then marked for identification and later State's Exhibit No. 11, was not the only signed statement given by Jones and that another signed statement previously in the possession of the police had been destroyed by them, we cannot doubt but that Jones' counsel would have questioned Rodenheiser as to why the statement had been destroyed. Jones' attorney could, and it must be assumed, would have asked questions to bring out facts relating to the destruction of the statement. Jones' counsel undoubtedly would have inquired whether, for example, the destroyed statement contained material favorable to the accused, not included in the statement in evidence. Once the issue of the destruction of a statement had been opened, it must be assumed that counsel representing Curran and Maguire would have made similar inquiries. Evidence elicited by such examinations, if favorable to the defendants, could and would have been argued by their counsel to the jury and the trial court would have charged the jury appropriately in respect thereto.[9]

There is testimony to show that the questioning of the defendants by the

8. The opinion of the Supreme Court of Delaware stated, 10 Terry at page 593, 49 Del. at page 593, 122 A.2d at pages 129–130: "Moreover, there is nothing incriminating in the statements. All of the defendants denied that they used the word 'moaning', but this is of little significance. In its context, it is consistent with the defense of consent, for the statements indicated that the men (or at least two of them) had tried and were unable to effect full penetration. The medical testimony indicated that the girl had been a virgin, and rude attempts at intercourse, though consented to, might well have caused pain. As to this point, the important issue was not whether the girl was 'moaning' but whether she was screaming. The defendants called three witnesses who said they were in the car with the defendants, followed them to the park, and heard no outcry."

While we cannot agree with the conclusion expressed in the first sentence quoted above, it is immaterial to the issue

here presented. The statements were incriminating to the extent that their contents, at least as to place and time, connected the three defendants with the commission of the crime charged in the indictment.

9. In his deposition given in the course of the Rule 35(a) proceeding, see note 7, supra, Superintendent Andrew J. Kavanaugh stated in substance that the reason the statements were destroyed was that Rodenheiser believed that the original statements were unimportant and that the latter statements contained all matters of substance. Superintendent Kavanaugh is a police officer of great experience and unquestioned integrity but it cannot be assumed that the destroyed statements were harmless to the State's case and it is apparent from Superintendent Kavanaugh's deposition that neither he nor any other person could say then or can say now with accuracy what was contained in the destroyed statements.

police began about 2:45 A.M. on October 30th and continued until 4 or 4:30 P.M. Had it appeared that statements had been destroyed the defendants' counsel certainly would have been entitled to argue and would have argued the inference that members of the Bureau of Police continued the questioning of the defendants from time to time throughout this period, getting several statements from them until the police had procured admissions more favorable to the State's case, destroying statements less favorable to the State's position. We are not to be understood as asserting that the members of the Bureau of Police did so conduct themselves but under the circumstances at bar such an inference can certainly be drawn.[10] The perjury of Rodenheiser denied to the defendants the opportunity to bring out facts which would have aided their defense.

We do not, however, hold that this alone was sufficient to cause the proceedings at the trial to pass the line of "tolerable imperfection"[11] and constitute fundamental unfairness. It is not necessary to decide this issue here for reasons which will appear immediately hereinafter.

We come now to the second question. The principal issue at the trial was whether the complaining witness had consented or had not consented to sexual intercourse. If the jury believed that the defendants had lied as to the number and kind of statements which they had given to the police, we think the defendants' testimony on the issue of consent might have been deemed by the jury to be entitled to little weight. The testimony of police officers usually is given

credence by members of the jury. Here the issue of credibility of the police and that of the defendants was brought sharply into focus. The State closed with the evidence of Rodenheiser in rebuttal on the very issue of the number of statements given by Jones and Maguire and that testimony must have had its effect on the jury.[12] We cannot assume to the contrary. The jury might indeed have regarded the assertions of the defendants that there had been other statements in the possession of the police as brazen falsehoods. The damage done to the defendants by Rodenheiser's false testimony may have been substantial in view of the pivotal issue of consent. The jury may well have applied the equivalent of the maxim *falsus in uno, falsus in omnibus*.

■ The State seemingly concedes, as indeed it must, that the suppression of evidence by a prosecuting officer is enough to constitute such fundamental unfairness as to amount to a denial of due process of law. Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690; Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. Cf. United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815, 819, 33 A.L.R.2d 1407, certiorari denied 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341, rehearing denied, 1953, 345 U.S. 946, 73 S.Ct. 828, 97 L.Ed. 1371. But the State contends in substance that the risk of perjured testimony must be run and that unless knowledge of such perjury is brought home to the prosecuting officers, there can be no

---

10. The policy of a prolonged examination of defendants prior to arraignment by State officers, permitted to some extent by the Supreme Court of the United States in Cicenia v. Lagay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, is not pertinent to the issue presented. See also Gallegos v. State of Nebraska, 1951, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86.

11. See the opinion of the court below, 154 F.Supp. at page 31.

12. A very substantial part of the evidence given at the trial related to the issue of the number of signed statements given by the defendants to the members of the Wilmington Bureau of Police.

Of the 1012 typewritten pages of the transcript of the trial, up to the presentation of prayers to the court, 168 pages concerned the statements. Of these, 50 pages directly concerned the issue of the number of statements.

basis for a finding of lack of due process in a habeas corpus proceeding.[13]

In Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, it was alleged that the prosecuting attorney had knowledge of and had contrived a conviction by the presentation of testimony known by him to be perjured. Following that decision some federal courts indicated, despite the broad language [14] employed by the Supreme Court, that the principle of the Mooney case was limited to perjurious testimony brought home to prosecuting officers. See United States v. Spadafora, 7 Cir., 1952, 200 F. 2d 140; Wild v. State of Oklahoma, 10 Cir., 1951, 187 F.2d 409; Tilghman v. Hunter, 10 Cir., 1948, 167 F.2d 661; Casebeer v. Hudspeth, 10 Cir., 121 F.2d 914, certiorari denied, 1941, 316 U.S. 683, 62 S.Ct. 1272, 86 L.Ed. 1755, rehearing denied, 1942, 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562. Without further interpretation of the Mooney decision, we conclude that this issue has been settled by Pyle v. State of Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214.

■ An examination of the record in the Pyle case discloses, as the learned Judge below pointed out, that the prosecuting officer was in no wise a party to or cognizant of the perjured testimony given by certain witnesses of the State of Kansas or of the fact that the law enforcement officers had taken steps to procure false testimony favorable to the prosecution.[15] We conclude, as did the court below, that the knowingly false testimony of Detective Rodenheiser under the circumstances of the case at bar was sufficient to cause the defendants' trial to pass the line of tolerable imperfection and fall into the field of fundamental unfairness. In addition when we consider that the defendants were deprived of inquiry on the issue of why statements given by them were destroyed, we can entertain no doubt that the court below did not err in determining that the writ should issue. On the whole record we find that the defendants were denied due process of law as guaranteed to them by the Fourteenth Amendment.

■ We point out that in a proceeding such as that before us we do not and cannot pass on the guilt or innocence of the defendants. As was said in Chessman v. Teets, 1957, 354 U.S. 156, 165, 77 S.Ct. 1127, 1132, 1 L.Ed.2d 1253: "On many occasions this Court has found it necessary to say that the requirements of the Due Process Clause of the Fourteenth Amendment must be respected, no matter how heinous the crime in question

13. The State cites United States v. Jakalski, 7 Cir., 1956, 237 F.2d 503. But the case cited is easily distinguished since in Jakalski there was a finding of no perjurious testimony.

Rule 35(a) of the Delaware Rules of Criminal Procedure is patterned on Section 2255, Title 28 U.S.C. To avoid confusion we point out that in the instant case the defendants are proceeding under Section 2241, Title 28 U.S.C.

14. The Supreme Court stated: "Without attempting at this time to deal with the question at length, we deem it sufficient for the present purpose to say that we are unable to approve this narrow view of the requirement of due process. That requirement, in safeguarding the liberty of the citizen against deprivation *through the action of the state*, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions." 294 U.S. at page 112, 55

S.Ct. at page 341. (Emphasis added.)

We point out that "The Mayor and Council of Wilmington" is a creature of the State, chartered as a city by act of the Delaware Legislature in 1832. 8 Laws of Delaware c. CVIII, at p. 97 (1832). We can draw no pertinent distinction under the circumstances of the case between action by an instrumentality of "The Mayor and Council of Wilmington", viz., the Bureau of Police of Wilmington, and "State" action under the Mooney and Pyle decisions.

15. It should be pointed out that in Pyle v. State of Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, the case was before the Supreme Court of the United States for review of an order denying an application for habeas corpus and the Court assumed for the purposes of the application that the facts alleged in the petition were true.

and no matter how guilty an accused may ultimately be found to be after guilt has been established in accordance with the procedure demanded by the Constitution."

The judgment of the court below will be affirmed.