THE STATE OF OHIO *v.* DeFRONZO.

(No. CR 76-6076—Decided September 29, 1978.)

Court of Common Pleas of Lucas County.

114

*Lucas County Prosecutor's Office,* for plaintiff.
*Jon D. Richardson,* for defendant.

PIETRYKOWSKI, J. Before the court is the defendant's petition for a new trial based on newly discovered evidence, violation of due process of the law, infringement by the State of Ohio on the integrity of the court, and misconduct by a state's witness. After hearing oral arguments and the evidence presented by both sides, and considering memoranda of law by the parties, the court has reached the following conclusions.

### FACTS

On May 18, 1976, two Toledo Metropolitan Drug Unit Agents, with the assistance of uniformed members of the Toledo Police Department, entered the office of Nicholas R. DeFronzo, M. D., to serve an arrest warrant. A search of the defendant incident to his arrest produced, *inter alia*, a tinfoil packet allegedly containing cocaine, a loaded pistol and several prescription slips. Some of the prescriptions were partially filled out while others were completed. The defendant was subsequently indicted on a fourteen count indictment by the Lucas County Grand Jury.

The first count of the indictment charged the defendant with possession of a narcotic drug in violation of R. C. 3719.09. The second count of the indictment charged the defendant with carrying a concealed weapon in violation of R. C. 2923.12. The third through the fourteenth counts of the indictment charged the defendant with having made illegal prescriptions in violation of R. C. 3719.171.

After certain pre-trial motion hearings were conducted, the trial was heard by a jury. On May 12, 1977, after four days of trial, the defendant was found guilty on each of the fourteen counts.

DeFronzo was ultimately sentenced to serve from nine to forty-five years in prison and ordered to pay fines totaling $25,000.

Certain expert testimony was offered at trial to show

the chemical make-up of the material found in the possession of the defendant, the operability of the weapon found in the possession of the defendant, and the analysis of the handwriting on the prescription slips found in possession of the defendant.

Sergeant Richard Zielinski, of the Toledo Police Department Crime Laboratory, testified at the trial. In testifying on behalf of the state of Ohio, Zielinski purported to qualify himself as an expert in drug analysis by stating under oath that he had a four year Bachelors Degree in Pharmacy from the University of Toledo. He further represented to the court that he had a license from the Drug Enforcement Administration which allowed him to analyze and test controlled substances and drugs, and that he had received certain on-the-job training. Finally, in further testimony of his qualified skill in drug analysis, Zielinski stated that he had attended various State and Federal seminars regarding the analyzation of drugs.

As to his expertise in the area of weapon operability, Zielinski testified that he actually fired approximately 700 weapons during the previous year to determine whether they were operable.

Zielinski similarly claimed to elevate his level of expertise in the area of handwriting analysis to that of an expert by stating that he had attended a class in document examination and document comparison at the F. B. I. Academy in Quantico and that he had attended a seminar on handwriting which was sponsored by the Bureau of Criminal Identification (BCI). Additionally, Zielinski testified that he received on-the-job training and that he had personally performed approximately 150 handwriting comparisons during the preceding year.

As to the first count of the indictment, possession of a narcotic drug, Zielinski testified that he had analyzed the substance found in the tinfoil packet and determined that cocaine was present. This determination, he stated, was based on medical certainty. The second conclusion Zielinski reached relative to the alleged cocaine was that it was not of pharmaceutical grade.

As to the second count of the indictment, carrying a

concealed weapon, Zielinski testified that he had test fired the pistol originally on May 18, 1976, and again on May 9, 1977. Based on those tests, Zielinski testified that he had determined to a scientific certainty that the gun was operable.

As to the remaining counts of the indictment, making illegal prescriptions, Zielinski testified to a scientific certainty that the handwriting on the prescriptions was that of DeFronzo. This determination was based on Zielinski's personal analysis of the prescriptions.

Zielinski was the state's sole witness who testified as to the composition of the substance found in the tinfoil packet, the operability of the pistol, and the identity of the handwriting on the prescriptions.

On September 2, 1977, an article in the Toledo Blade newspaper represented that the Toledo Police Crime Laboratory was under investigation for alleged irregularities in procedures.

On September 6, 1977, the defendant filed a motion for a new trial.

As a result of the police division's internal affairs investigation into the Crime Laboratory, Richard Zielinski was indicted on, and pled guilty to eight counts of falsification for mistating his academic credentials. *State* v. *Zielinski*, CR 78-5273 (Lucas Co. C. P.). One of the eight counts involved Zielinski's testimony in the case now at bar.

Numerous hearings have been held and substantial testimony has been taken in connection with the defendant's motion for a new trial. The fruit of that testimony related to each of the counts in DeFronzo's indictment as follows:

### Count One

A) Zielinski did not have a four year degree from The University of Toledo in Pharmacy.

B) Nowhere in Zielinski's personnel file is there a license from the Drug Enforcement Administration, nor was any such license produced at any hearing.

C) Zielinski was the recipient of on-the-job training from various police captains who served as head of the Crime Laboratory beginning in 1968.

D) Zielinski did not attend any State seminars conducted by the Ohio Bureau of Criminal Identification and Investigation. There was no specific evidence adduced relative to the veracity of Zielinski's trial testimony that he attended any Federal drug seminars.

E) A civilian crime lab technician testified during the new trial hearings that Zielinski related to him that he, Zielinski, had not performed the drug analysis in the Nicholas DeFronzo case, but that a local doctor made the analysis.

F) A stipulation was subsequently entered into which agreed that if the local doctor in question was to testify, the testimony would be that he, the doctor, did not perform the tests.

G) Gary Heil, one of the two Metro Drug Agents who made the arrest of DeFronzo related to the court that he was present with Zielinski when the cocaine was analyzed, and that the testing was performed on the day of the arrest, May 18, 1976. The is in direct conflict with Zielinski's trial testimony in which he stated that the analysis took place on June 11, 1976.

H) The substance found in the tinfoil packet was analyzed on August 3, 1978, and found to be cocaine. Additionally, there was no interfering substance found in the cocaine.

I) The tinfoil packet was checked out of the police property room on June 10, 1976, and returned on June 11, 1976. The return was made by Richard Zielinski.

### Count Two

A) Agent Heil testified that the pistol was test fired on only one occasion, that being on the day of trial. Heil further testified that he personally fired the weapon at the testing, and that Zielinski never had possession of the gun.

### Counts Three through Fourteen

A) Zielinski never attended the F. B. I. Academy on the subject of handwriting, and he never attended any BCI sponsored handwriting analysis seminars.

B) The Crime Laboratory receives, on the average, three requests for handwriting analysis per month.

C) The handwriting on the prescriptions is that of DeFronzo.

In addition to testimony relating to Zielinski's participation in the DeFronzo case, salient testimony was adduced regarding Zielinski's conduct in other criminal cases.

First, Zielinski told personnel of the Crime Laboratory on different occassions that he was using the Bowling Green Laboratory to run tests which were related to police work. By his own admission, no such tests were ever conducted.

Second, Zielinski told Crime Laboratory personnel at the Crime Laboratory that he was using the infrared spectrophotometer machine at Owens Technical School to test drugs. By his own admission, Zielinski was not familiar with the infrared instrument.

Third, Zielinski told a police officer that bullets which were to be used in a burglary-murder case had been sent to the FBI for analysis when in fact they were in a desk drawer. Zielinski told the officer that the FBI had reached the same conclusion which he had made regarding their identification.

### Criminal Rule 33 (A)(6)

Motions for new trials based on newly discovered evidence are not favored by the court. *Diener* v. *White Consol. Industries, Inc.* (Mahoning Co. 1968), 15 Ohio App. 2d 172. It is well-settled that a new trial under Rule 33 rests within the broad discretion of the trial judge. *State* v. *Williams* (1975), 43 Ohio St. 2d 88; *Cincinnati* v. *Means* (1974), 71 O. O. 2d 285.

The traditional standards for the granting of a new trial based on newly discovered evidence are set forth in *State* v. *Petro* (1947), 148 Ohio St. 505 and *State* v. *Lopa* (1917), 96 Ohio St. 410. The requirements are that the evidence must have been discovered since the trial, that the evidence could not have been found by due diligence before trial, that the evidence is material to the issues and not merely cumulative or impeaching or contradictory to the former evidence, and that there be a strong probability of a change in the result of the trial.

The court is satisfied that the evidence was discovered

after trial. The court is also satisfied that after considering the totality of the circumstances, due diligence does not require that the evidence could have been found before trial.

With regard to the materiality of the evidence to the issues, it must be noted that absent Zielinski's testimony at the trial, at least one element in each count of the indictment would not have been proven by the prosecution. The credibility of the entire testimony was predicated on the assumption that Zielinski, by virtue of his espoused credentials, was worthy of credence and reliance which is afforded to an expert witness. This court finds that testimony relating to his qualifications as an expert was so inevitably intertwined with the material issues of the case that it is material itself.

Under the traditional standard, the final component to be considered under a Rule 33 motion for a new trial is the probability of a different result in the event of a new trial. *State* v. *Petro, supra.* The defendant concedes that under the conventional *State* v. *Petro* requirement, a Rule 33 motion would not lie.

The defendant suggests that the test prescribed in *Larrison* v. *United States* (C. A. 7, 1928), 24 F. 2d 82, is applicable in the instant case. *Larrison, supra,* at 87-88, sets forth the following yardstick for the granting of a new trial due to newly discovered evidence:

"* * * a new trial should be granted when,

"(a) The Court is reasonably well satisfied that the testimony given by a material witness is false.

"(b) That without it the jury *might* have reached a diferent conclusion.

"(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial."

While the *Larrison* test has been applied recently in certain jurisdictions, see *United States* v. *Wallace,* (C. A. 4, 1976), 528 F. 2d 863, it has also been rejected in other jurisdictions. See *United States* v. *Stofsky* (C. A. 2, 1975), 527 F. 2d 237.

Most recently, a standard has been applied which requires a new trial if false testimony could, in any reasonable likelihood, have affected the judgment of the jury, *United States* v. *Butler* (C. A. 9, 1978), 567 F. 2d 885. The court is impressed with the reasoning set forth in both *Larrison* and *Butler*. However, due to the split of authority in general and due to the apparent "probability test" which is in effect in Ohio, this court holds that the test set forth in *State* v. *Petro, supra,* is controlling. The motion for a new trial based on Rule 33(A)(6) is therefore found not well taken and denied. The court wishes to note, however, that the *Petro* test is being followed because the court believes it to be the state of the law in Ohio, not because the court necessarily agrees with the standard.

## DUE PROCESS

Section 16, Article I of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution guarantee that no person will be deprived of life, liberty, or property by the State without due process of law.

While no defendant can be guaranteed a perfect trial, each defendant must be guaranteed a fundamentally fair trial, for fairness in our dealings with the government is the cornerstone of our faith, trust and support in the government's system. Due process of the law is breached when the government's procedures pass beyond the line of tolerable imperfection and fall into the field of fundamental unfairness. *Curran* v. *Delaware* (C. A. 3, 1958), 259 F. 2d 707, 713. Our system of administration of justice suffers when any accused is treated unfairly. *Hilliard* v. *Williams* (C. A. 6, 1975), 516 F. 2d 1344, 1350.

When considering whether the state has deprived a person of due process in a criminal trial, there is no suggestion that different "arms" of the government are severable entities, particularly when they are closely connected. *United States* v. *Deutsch* (C. A. 5, 1973), 475 F. 2d 55, 57. Therefore, the city's police department represents the state no less than the prosecutor's office, and the taint on a trial is not less if the police, rather than the state's attorney, are guilty of misrepresentations. *Barbee* v. *Warden* (C. A. 4, 1964), 331 F. 2d 842.

Nor, for the purposes of due process, may any distinction be drawn as to whether the prosecutor acted in good faith. *United States* v. *Ash* (1973), 413 U. S. 300, 320.

In order for a due process claim to lie, the evidence in question must be material. *Brady* v. *Maryland* (1963), 373 U. S. 83, 87. Materiality of perjured testimony is not germaine solely to the defense employed at trial, but also as to how the defendant may have prepared his case differently, had the falsehood been known. *Grant* v. *Alldredge* (C. A. 2, 1974), 498 F. 2d 376, 381.

During the course of the trial, Mrs. DeFronzo testified. In her testimony, she stated that the signatures on the prescriptions looked like her husband's writing. This testimony corroborated Zielinski's testimony regarding the handwriting, and may have had considerable bearing on the verdict of the jury on counts three through fourteen. Had the defendant known of Zielinski's true qualifications in handwriting analysis, it is reasonable to conclude that competent counsel may have prepared his case differently when deciding whether to put Mrs. DeFronzo on the witness stand. For this reason, and for the reasons stated previously in the Rule 33(A)(6) section of this opinion, the court finds that the false testimony was material.

In cases similar to the case at bar where the government has perpetrated falsehoods upon the court at trial, it has been often held that a new trial is required if the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *United States* v. *Agurs* (1976), 427 U. S. 97, 103; *Giglio* v. *United States* (1972), 405 U. S. 150, 154; *Napue* v. *Illinois* (1959), 360 U. S. 264, 271.

It is the opinion of the court that had the jury known that Zielinski had no training in drug analysis in an academic setting; had the jury known there would be doubt cast as to who test fired the pistol and when; and had the jury known that Zielinski had no formal training in handwriting analysis, there is a reasonable likelihood that the judgment of the jury could have been affected.

## INTEGRITY OF THE COURT

The defendant further asks relief from this court, regardless of the materiality of the testimony, because the

state of Ohio has infringed the integrity of both the court and the criminal justice system. The court can conceive of no infringement which is more serious than the lying of a police officer which substantially contributes to the conviction and loss of freedom of a defendant.

In the case at bar, a state's witness, by his own admission, knowingly and purposely lied while on the witness stand. He lied as to his credentials while attempting to qualify himself as the State's only expert witness. In testifying, he spoke in terms such as to a "medical certainty," and to a "scientific certainty." While Zielinski may have considered himself to be an expert by virtue of his on-the-job experience, therefore obviating the need for accurately qualifying testimony, it was not his business to decide the importance of the questions which were posed to him. It was his sworn obligation to answer all queries put to him truthfully and fully. This, an officer of the law failed to do.

What the court is being asked to do by the prosecution is sustain a conviction based on perjured testimony. As if it is not enough that Zielinski had no formal instruction on drug analysis, there is now considerable doubt in the court's mind who, if anyone, tested the cocaine as well as the date of the analyzation. Even if Zielinski tested the cocaine, there is doubt in the court's mind as to the competency of that analyzation. Zielinski testified at trial that there were interfering elements in the cocaine. A certified expert re-analyzed the substance on August 3, 1978, and found no interfering elements.

As if it is not enough that there is confusion as to when the pistol was test fired, and how many times it was test fired, there is now considerable doubt as to who test fired the pistol. If the court believes Zielinski, then the Metro Drug Agent lied. If the court believes the Metro Drug Agent, then Zielinski lied. Both testified at the trial.

As if it is not enough that Zielinski had no expert schooling in the area of handwriting analysis, it now appears that he grossly overstated the frequency with which he analyzed handwriting in order to bolster his credibility.

The court is perplexed as to why the state is satisfied

to have the conviction stand under such circumstanaces. The state seems to fail to realize that its highest duty to the people of the State of Ohio is the participation in the system's quest for justice. The word justice is not synonymous with the word convictions.

The state seems to have also taken comfort in the revelation that following the trial, tests were conducted which proved the drug to be cocaine, the gun to be operable, and the handwriting on the prescriptions to be DeFronzo's. The proper time for the State to have put reliable expert testimony before the court was at the time of trial.

In *Mesarosh* v. *United States* (1956), 352 U. S. 1, the court was faced with a situation which is not dissimilar to this one. In that case, the Supreme Court observed that

"The dignity of the United States Government will not permit the conviction of any person on tainted testimony." 352 U. S. at 9.

And, that

"The government of a strong and free nation does not need convictions based upon such testimony. It cannot afford to abide with them." 352 U. S. at 14.

This court will not permit a lesser standard in this case, and accordingly, the defendant will be granted a new trial based on a violation of due process of the law, and the infringement which has been perpetrated upon the integrity of this court as well as the criminal justice system.

The court, having already passed judgment on the defendant's petition for a new trial based on newly discovered evidence, violation of due process of the law, and infringement by the state of Ohio on the integrity of the court, finds it unnessary to rule on the defendnt's motion for a new trial based on misconduct by a state's witness.

It is therefore ordered, adjudged and decreed that the motion for a new trial is granted for the above stated reasons.

*Motion for new trial granted.*