Francis J. Curran, Francis J. Maguire and Ira F. Jones, Jr., Appellants, v. The State of Delaware, Appellee.

(*April* 16, 1956.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Irving Morris* (of Cohen and Morris) for appellants.

*Frank O'Donnell, Jr.*, Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 18, 1955.

SOUTHERLAND, C. J.:

In February, 1948, the appellants, Curran, Maguire and Jones, were convicted of the crime of rape. A brief summary of the State's evidence at the trial is as follows:

[1] At some time after midnight on October 30, 1947 Jean Igle, 23 years old, unmarried, was waiting for a bus near the corner of Fourth and Union Streets in the City of Wilmington. An automobile passed and stopped. The three men were in it. Curran got out, approached the girl, and asked her for a match. She had none, and he offered to escort her home. She went with him. They walked west on Fourth Street, turned north (away from the direction in which lay her home), and went to a public park which extends for two blocks, from Fourth to Sixth Streets,

along a railroad right of way. They entered the park. While there Curran attacked her. Maguire and Jones had followed them. All of them, she testified, ravished her. Two witnesses living in nearby houses heard screams. A woman in another nearby house called out to them: "You had better leave that girl alone or I will call the cops." At about a quarter of two a telephone call from an unknown woman was received at police headquarters. She said: "Please send the police quick, there is a girl screaming down in the Park on Ferris Street, and I think she is being raped."[1]

After the woman had called out and threatened to call the police, Maguire and Curran left. Jones walked with the girl to Fourth Street, where police officers, in two police cars, found them. The girl, as soon as she was out of Jones' presence, made a complaint of rape.

Jones was taken to the police station and the girl was sent to a hospital and examined. The medical and other testimony relating to her condition left no doubt that she had been subjected to brutal violence, and that sexual intercourse had taken place.

Maguire and Curran were arrested shortly thereafter.

At the police station all three men were questioned by police officers and eventually signed statements. None of these statements admitted any violence. All three statements asserted, or tended to show, that the girl had consented to intercourse.

The jury found all the defendants guilty, and recommended them to mercy. They were sentenced to life imprisonment, the minimum term then permitted by the statute. Each defendant was represented by experienced counsel. No appeal was taken.

In 1953 the prisoners filed a petition for *habeas corpus,* asserting that in several respects they had been denied at the

---

[1]This statement was not before the jury; but it appears to us to be admissible as a part of a spontaneous exclamation. *VI Wigmore,* Evidence, §§ 1750.

trial their constitutional rights. The judge dismissed the petition without prejudice, holding that *habeas corpus* was not the proper remedy, that remedy being a proceeding under Rule 35 of the Criminal Rules of Procedure. *Curran v. Wooley,* 9 *Terry* (48 *Del.*) 214, 101 *A.* 2d 303. We affirmed 9 *Terry* 382, 104 *A.* 2d 771.

■ The prisoners then filed a petition under Rule 35 of the Rules of Criminal Procedure, relating to correction or reduction of sentence. Paragraph (a) of that rule provides a post-conviction remedy to a prisoner claiming, among other things, that his sentence was imposed in violation of the constitution and laws of this State or of the United States, or that the Court imposing such sentence was without jurisdiction to do so. Its obvious purpose is to provide at least as wide a post-conviction remedy as the remedies afforded by *coram nobis* and *habeas corpus.* It is similar to the provisions of 28 *U. S. C. A.* § 2255. It is undoubtedly designed to afford post-conviction relief of sufficiently broad scope to comply with the holding of the Supreme Court of the United States relating to federal review under 28 *U. S. C. A.* § 2254 of State convictions for crime alleged to have been obtained in violation of federal constitutional rights. See, for example, *Brown v. Allen,* 344 *U. S.* 443, 73 *S. Ct.* 397, 97 *L. Ed.* 469. But our rule also refers to convictions obtained in violation of our State constitution and laws. We think the purpose of Rule 35(a) is to afford a simple and efficient remedy to any prisoner who claims that his conviction was obtained by a disregard of the fundamental fairness essential to the very concept of justice. *Cf. Wilson v. State,* 10 *Terry* 37, 109 *A.* 2d 381.

■ This does not mean that Rule 35(a) is a substitute for a writ of error, as suggested in the comments of the draftsmen of the rule. We agree with Judge Layton's observation in *Curran v. Wooley, supra,* to the effect that the remedy under Rule 35(a) cannot serve as a substitute for a writ of error. Error of law at the trial is ordinarily reviewable only by appeal.

The prisoners assert that they were denied the substance of a fair trial because their conviction was obtained upon perjured testimony given by one of the police officers who testified against them. They say that he falsely testified that he had taken from Jones and Maguire one written statement; whereas, it now appears that he had taken two statements, and destroyed the first; notwithstanding which he identified the second statements as the first and only statements signed by them.

The facts are these:

After their arrest, all three defendants were questioned by officers of the Wilmington police during the early morning hours. Curran was questioned by Officer Nagle in the presence of two other officers. Jones and Maguire were questioned by Officer Rodenheiser in the presence of Officer Mazewski.

After some preliminary questioning, all three men made and signed statements with respect to their actions. The purport of all three was that the girl had consented to intercourse, first with Curran and then with the others, although Maguire said that he did "not remember" trying to have sexual intercourse with any woman in the park. Curran and Jones said they tried to have intercourse but could not make penetration. None of these statements was a confession of the crime. Counsel made that point at the trial and the court agreed. Each statement, however, said in varying forms, that the girl was "moaning" while one or more of the men was attempting intercourse.

The question before us concerns primarily the Jones and Maguire statements. For the sake of clarity, we shall first state what is now shown to have actually happened. The following facts are taken from the testimony and depositions taken in connection with the hearing on the petition, including a report of an investigation of the matter made by direction of the Superintendent of the Department of Public Safety shortly after the trial.

Detective Nagle took Curran's statement and typed it. After it was finished Curran refused to sign it because his name was

spelled "Kern". Nagle immediately retyped the statement and Curran signed it. Nagle then telephoned Rodenheiser and advised him "of such a mistake appearing in his statements". Nagle then proceeded with other work. During this time Rodenheiser came to Nagle with the Jones and Maguire statements and asked Nagle to retype them because of the mistakes in the names and other typographical errors. Nagle was an experienced typist; Rodenheiser was not. Nagle remembered that the Jones statement was signed but did not remember whether the Maguire statement was signed. Nagle retyped both statements. It was approaching 8:00 a. m. when the work was finished. Nagle returned the two sets of statements to Rodenheiser. According to Rodenheiser, Mazewski took one of the statements (presumably Jones') down to the cells and had it signed. We shall assume that the second Maguire statement was also signed. Rodenheiser then destroyed the original statements. Rodenheiser testified positively that the retyped statements were exact copies of the originals except for the corrections referred to. Superintendent Kavanaugh's investigation, made shortly after the trial, satisfied him that this was true.

At the trial the three retyped statements were admitted in evidence. No objection was made to Curran's statement. Jones' counsel objected to his client's statement and requested *voir dire* examination in order to show that the statement was not voluntary. During this examination Rodenheiser was asked whether Jones signed another statement, and replied that Jones had not. This denial was reiterated at a later point during the State's case.

Maguire's statement was admitted without objection.

Each of the defendants testified that he had signed two statements. In rebuttal Rodenheiser was recalled, shown Jones' statement, and testified that "that particular statement" was signed by Jones about 4:00 a. m. Shown Maguire's statement, he testified that it was signed about 5:00 a. m.

The record leaves no doubt that Rodenheiser's testimony was untrue. It is inconceivable to us that he could have

failed to understand the point of counsel's questions. His explanation of the matter at the hearing below, which the State attempts to justify, is that there was in fact only one "statement" because the "statement" was the substance of what the men said —not the piece of paper, and hence the matter was unimportant. This is mere equivocation. Counsel was entitled to the facts, and entitled to make such use of the facts as he saw fit. We think Rodenheiser's conduct on the stand highly reprehensible. As Judge Carey observed, a witness has no business deciding the importance of any particular question or line of testimony; it is his sworn duty to answer the questions put to him truthfully and fully. This Rodenheiser, an officer of the law, failed to do.

█ The question before us is whether this misconduct robbed the defendants of their fundamental right to a fair trial.

We do not think so, for the following reasons:

(1) There is no sufficient evidence that the retyped statements differed from the original in any material matter. Rodenheiser did not do the retyping. It was done by Nagle, and there is no suggestion that Nagle and Rodenheiser were conspiring to foist a fraudulent statement upon any defendant.

Moreover, there is nothing incriminating in the statements. All of the defendants denied that they used the word "moaning", but this is of little significance. In its context, it is consistent with the defense of consent, for the statements indicated that the men (or at least two of them) had tried and were unable to effect full penetration. The medical testimony indicated that the girl had been a virgin, and rude attempts at intercourse, though consented to, might well have caused pain. As to this point, the important issue was not whether the girl was "moaning" but whether she was screaming. The defendants called three witnesses who said they were in the car with the defendants, followed them to the park, and heard no outcry.

As to Jones, the statement taken by the officers did not include an incriminating admission made when he was found with

the girl by the police. He told Officer McDermott that she screamed so loud that a neighbor raised the window and threatened to call the police. In the statement taken by Rodenheiser, this admission is not found—certainly an indication that the examining officers were not attempting to extort a confession or to distort Jones' language.

Counsel argues that the destruction of the original typed copies is a badge of fraud, and raises a presumption that the statements were different. *Equitable Trust Co. v. Gallagher,* 32 *Del. Ch.* 401, 102 *A.* 2d 538, is cited. That was a case of the destruction of all existing copies of a contract, and is not in point here. If manufactured evidence had been the purpose of the second statements, why did they not include something incriminating?

■ (2) Each member of this Court has read the entire record of the trial for rape. The Court has also been furnished with a transcript of the addresses to the jury of all three counsel for the defendants, and of the closing address for the State. We are convinced that the issue concerning the two statements played no material part at the trial. The point was not argued to the jury. The issue before the jury was whether the girl consented to have intercourse with these men. Counsel for the defendants directed their attack not only against the girl's story, but sought to belittle the medical evidence, and urged the jury to accept the evidence of the three witnesses who said they heard no screaming. We are satisfied that the issue of the two statements played no material part in the case. And the State's evidence, together with the inherent improbability of the defendants' testimony, amply justified the verdict.

Counsel argue that the issue made at the trial was a question of the girl's veracity against the defendants' veracity. In resolving this conflict, they say, the jury could well have believed that Rodenheiser's denial of the second statement so discredited the defendants' testimony as to turn the scales against them and result in conviction. This is too narrow a view of the matter.

The case depended not merely on the girl's testimony that she did not consent; its strength derived from the attendant circustances above referred to. Counsel's argument on this point is an attempt—natural enough—to magnify unduly an incident that could have wrought no serious harm to the defendants.

Counsel argues that as a matter of law perjury by officers of the State, though not implicating the prosecuting officer, is sufficient in itself to rob the trial of fundamental fairness. *Cf. Mooney v. Holohan,* 294 *U. S.* 103, 55 *S. Ct.* 340, 79 *L. Ed.* 791; *People v. Steele, Gen. Sess.,* 65 *N. Y. S.* 214. These cases involved the use of perjured testimony to convict, and the participation of the prosecuting officer. The federal rule appears to be that perjury by a witness is not a denial of due process unless brought home to the prosecuting officer. See, for example, *Casebeer v. Hudspeth,* 10 *Cir.,* 121 *F.* 2d 914; *Tilghman v. Hunter,* 10 *Cir.,* 167 *F.* 2d 661; *Hinley v. Burford,* 10 *Cir.,* 183 *F.* 2d 581; *Wild v. Oklahoma,* 10 *Cir.,* 187 *F.* 2d 409.

■ It is not necessary in this case to decide whether this is a sound general rule for our courts in reviewing a conviction under Rule 35. It is conceivable that a case might be so shot through with perjury, though unknown to the prosecuting officer, as to lead to the conclusion that the prisoner had never had the semblance of a fair trial. But no such case is made here. Due process does not and cannot guarantee to a defendant complete immunity from false testimony; and hence false testimony of a witness is not in itself ground for the conclusion that fundamental constitutional rights have been violated. To warrant relief under Rule 35, much more must be shown than appears in this case.

■ Counsel argues that if a defendant's constitutional rights are violated at the trial the reviewing court will not pause to determine the probable effect of the violation upon the verdict, but will set it aside. *Leyra v. Denno,* 347 *U. S.* 556, 74 *S. Ct.* 716, 98 *L. Ed.* 948; *United States v. Morgan,* 2 *Cir.,* 222 *F.* 2d 673. This no doubt is true, but counsel's argument begs the question.

What constitutional right was violated here? It is not a case of an extorted confession, as in the *Denno* case, or a case of failure to provide counsel, as in the *Morgan* case. It is simply, as above stated, a case of false answers given by a witness upon a collateral or incidental point.

We may add that our reading of the record convinces us that the trial of the defendants was fair in all respects. The defendants' rights were scrupulously safeguarded. Indeed, in one or two instances, the trial court's rulings on evidence against the State appear to us to have been unnecessarily strict.

We are of opinion that the defendants have failed to show any violation of their constitutional rights at their trial.

The judgment of the Superior Court is affirmed.