Francis J. CURRAN, Francis J. Maguire, and Ira F. Jones, Jr., Petitioners,

v.

STATE OF DELAWARE, Respondent.

No. 12.

United States District Court
D. Delaware.

Aug. 15, 1957.

28

Irving Morris, Cohen & Morris, Wilmington, Del., for petitioners.

Joseph Donald Craven, Atty. Gen., and Frank O'Donnell, Deputy Atty. Gen., for respondent.

CALEB M. WRIGHT, District Judge.

The petitioners, Curran, Maguire and Jones were sentenced to life imprisonment following a conviction for rape in the Superior Court of the State of Delaware in February, 1948. In 1953 the petitioners filed a petition for a Writ of Habeas Corpus in the Superior Court of the State of Delaware, asserting that at trial they were denied their constitutional rights. The petition was dismissed without prejudice on the ground that the proper remedy was to proceed under Rule 35 of the Delaware Criminal Rules of Procedure and not by petition for a Writ of Habeas Corpus.[1]

1. Curran v. Woolley, 1953, 9 Terry 214, 48 Del. 214, 101 A.2d 303, affirmed 1954, 9 Terry 382, 48 Del. 382, 104 A.2d 771.

The petitioners then proceeded under Rule 35 of the Delaware Criminal Rules of Procedure which provides for a post-conviction remedy. Relief under the Rule was denied by the Superior Court of Delaware.[2] The Superior Court was affirmed in its denial of relief by the Supreme Court of Delaware, which held no constitutional rights, State or Federal, had been violated.[3] Subsequently, the prisoners filed a petition for a Writ of Certiorari with the Supreme Court of the United States. The writ was denied.[4]

The matter is now before this court on application by the three prisoners for a Writ of Habeas Corpus. The issue presented is whether false and evasive testimony of a police officer in a criminal case deprives defendants of constitutional due process when such testimony serves the threefold function of being cumulative evidence of the State's case-in-chief, of suppressing evidence which the defense was entitled to use as it saw fit, and finally, of impeaching the credibility of the defendants. The issue is not one of guilt or innocence of these defendants. The problem is whether that degree of "fundamental fairness essential to the very concept of justice"[5] as required by the Due Process Clause of the Fourteenth Amendment was achieved in the rape trial of these defendants. The heinous and brutal nature of the crime and the probabilities or possibilities of the establishment of guilt in accordance with the procedure demanded by the Federal Constitution are not before this court.[6] That nine years have elapsed since conviction is of no concern, for the overriding responsibility is to redress violations of the Constitution of the United States, regardless of when such violation occurs.[7]

Was the trial of Curran, Maguire and Jones void for lack of due process? At the trial, the defense was based upon consent to carnal knowledge and inability to penetrate. The State as part of its case, introduced, over objection of one of the defendants, exculpatory statements taken from each of the defendants. Since introduced by the State in its case-in-chief, the statements must be characterized as substantive evidence aiding the State in linking the defendants to the commission of the crime. Even though the evidence used for this purpose be cumulative, a conviction obtained by use of the statements must be set aside, if, when considered together with other factors, the trial is rendered fundamentally unfair to the accused. This result must follow even though evidence apart from the statements might have been sufficient to sustain the verdict.[8]

Detective John Rodenhiser, in charge of the investigation of the crime, testified there was only one statement signed by each of the defendants. Each of the defendants testified he had signed two statements. In rebuttal, toward the very end of the case the State recalled Rodenhiser who reiterated his testimony as to the number of statements. The effect of the conflicting testimony between the three defendants and Rodenhiser was twofold. In the first place, by suppressing the facts surrounding the "original" set of statements, defense counsel was deprived of the ability to make such use of this set of statements as might have been in the interest of petitioners. Secondly, and possibly more important, the contradiction in testimony served to permit the State to impeach the all-important credibility of the defendants by effective collateral attack.

2.  State v. Curran, 1955, 10 Terry 350, 49 Del. 350, 116 A.2d 782.

3.  Curran v. State, 1956, 10 Terry 587, 49 Del. 587, 122 A.2d 126.

4.  Curran v. State of Delaware, 1956, 352 U.S. 913, 77 S.Ct. 151, 1 L.Ed.2d 120.

5.  Lisenba v. People of State of California, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166; Lyons v. State of Oklahoma, 1944, 322 U.S. 596, 605, 64 S.Ct. 1208, 88 L.Ed. 1481.

6.  Cf. Chessman v. Teets, 1957, 77 S.Ct. 1127.

7.  Id.

8.  Cf. Malinski v. People of State of New York, 1945, 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029.

Eight years subsequent to trial, it was developed there were two sets of statements, and that the original statements had been destroyed prior to trial by Rodenhiser. In the words of the Supreme Court of Delaware, "Rodenheiser's conduct on the stand [was] highly reprehensible" and "the record leaves no doubt that Rodenheiser's testimony was untrue." [9]

It has been argued the lack of overwhelming convincing evidence that the two statements differed, coupled with the non-incriminating nature of the statements and the failure of counsel to argue the point before the jury, rendered the statements unimportant to the outcome of the case. The court cannot agree. Of the 1,085 pages of trial record, 175 pages concern the statements. Of the 1,085 pages of trial record, 920 pages consist of testimony and comment by court or counsel in the presence of the jury. Of these 920 pages, 124 pages concern the statements. It is true, the larger percentage of these 124 pages was concerned not with whether there were one or two statements but with whether the statements were voluntary. Nonetheless, the State deemed the issue of the number of statements so important that it recalled Detective John Rodenhiser in rebuttal as the last witness to be heard before the case went to the jury. Rodenhiser again laid particular stress upon the fact that there was only one statement and that the only statement taken was the one in evidence.

When reviewed in the context of the proceedings at trial, the strength of the State's position with respect to the false testimony and its effect on the jury's decision is placed in serious doubt. The court cannot be a vehicle to resolve state conjecture caused by a state wrong. Where there is false and evasive testimony resulting in suppression of evidence possibly vital to the defense, and which is also relevant to the State's case

and defendants' credibility, it is not the court's function to speculate on whether the prejudice knowingly injected into the case by a police officer caused a conviction.

Whenever a defendant takes the stand in a criminal trial his credibility is put in issue, and in every such case if there is a conviction the testimony of the defendant has been successfully discredited. What facet of the testimony in a case may discredit a defendant or affect his credibility in the eyes of a jury is speculative. It may be the strength of the State's case or the improbability of the story of the accused. It may be some isolated bit of testimony which although relevant, in the opinion of a court, should be given little weight in determining guilt or innocence.

Although the testimony of a witness may be upon a collateral issue and seemingly of little or no significance or help in reaching the conclusion of guilt or innocence, the standing of the witness in his community or his connection with a law enforcement agency of the State or City may magnify the importance of the testimony to a jury. Where the false and evasive testimony is that of a high ranking police officer in active charge of the criminal investigation, this court cannot say the testimony was immaterial to the outcome.

The concept that the use of perjured testimony is a denial of due process received its first consideration as dicta in the celebrated case of Mooney v. Holohan.[10] In its per curiam opinion the Supreme Court said that the requirement of due process:

> " * * * in safeguarding the liberty of the citizen against deprivation through the action of the state, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions. * * * It is a requirement that cannot be deemed to

9. Curran v. State, 1956, 10 Terry 587, 592, 593, 49 Del. 587, 592, 593, 122 A.2d 126, 129.

10. 1935, 294 U.S. 103, 55 S.Ct. 340, 342, 79 L.Ed. 791.

be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the state, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a State, 'whether through its legislature, through its courts, or through its executive or administrative officers.' * * * "

Following what they deemed to be the rule of the opinion in the Mooney case, some Federal Courts held that false and perjured testimony of a witness was not a denial of due process unless brought home to the prosecuting officers.[11]

In Pyle v. State of Kansas,[12] the dicta of the Mooney case was crystallized into law. But in the Pyle case the prosecuting attorney had no knowledge the testimony was perjured at the time it was received in evidence.[13] In Pyle v. State of Kansas it was alleged the witness was forced to give perjured testimony under threats by local authorities and the Kansas state police. The Supreme Court held the allegations were sufficient, if proved, to deprive the petitioner of the rights guaranteed to him by the Federal Constitution. The rationale of the court's decision in Pyle v. State of Kansas is the action of police officers as well as prosecuting officers on behalf of the State may constitute State action within the meaning of the Fourteenth Amendment.[14]

■ While untarnished administration of justice is one of the most cherished aspects of our governmental institutions perfection has not been achieved, and is not guaranteed by the Fourteenth Amendment. Federal due process does not assure to a defendant a trial free from false and evasive testimony.[15] Nor is the purpose of due process to punish misconduct of prosecuting officers or the police. On the other hand, the Fourteenth Amendment does guarantee a State shall not deprive an accused of certain fundamental rights.[16]

■ The line between tolerable imperfection and fundamental unfairness in a criminal trial is not clearly discernible. It must be determined which side of the line the false and evasive testimony of Detective John Rodenhiser causes this case to fall. This court is of the opinion the denial of the prior existence of the original statements by a high ranking police officer in direct contradiction to the testimony of the defendants, constitutes fundamental unfairness in the trial of a criminal case.[17]

---

11. Wild v. State of Oklahoma, 10 Cir., 1951, 187 F.2d 409; Tilghman v. Hunter, 10 Cir., 1948, 167 F.2d 661; Casebeer v. Hudspeth, 10 Cir., 1941, 121 F.2d 914.

12. 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L. Ed. 214.

13. In this connection, see also, Jones v. Commonwealth of Kentucky, 6 Cir., 1938, 97 F.2d 335.

14. See also: Concurring opinion of Mr. Justice Frankfurter in Fikes v. State of Alabama, 1957, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246.

15. Hodge v. Huff, 1944, 78 U.S.App.D.C. 329, 140 F.2d 686.

16. Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233.

17. Pyle v. State of Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; United States ex rel. Thompson v. Dye, 3 Cir., 1955, 221 F.2d 763; Jones v. Commonwealth, 6 Cir., 1938, 97 F.2d 335.

The writ should issue. The issuance of the writ, however, does not preclude a new trial or the taking of proper steps to hold the defendants in custody pending such a new trial.

An order in accordance herewith may be submitted.