STATE v. RICHARD EDWARD DEHLER.

102 N. W. (2d) 696.

April 8, 1960—No. 37,897.

*T. Eugene Thompson,* for defendant.

*Miles Lord,* Attorney General, and *Henry H. Feikema,* Special Assistant Attorney General, for the state.

FRANK T. GALLAGHER, JUSTICE.

This is a certification to this court by the district court, pursuant to M. S. A. 632.10, on the grounds that certain questions raised by the appellant, Richard Edward Dehler, on motions to set aside and quash certain indictments and to dismiss certain proceedings were so important and doubtful as to require a decision of this court.

Dehler was indicted on December 30, 1941, for the crime of murder in the first degree of his mother, father, brother, and sister. He was tried and convicted on January 23, 1942, on the indictment charging him with the murder of his mother and sentenced to life imprisonment. He was born on April 2, 1925. At the times of the commission of the offenses, the indictment, and the trial, Dehler was 16 years of age and is now 34 years old.

On February 7, 1942, he moved the court for immediate trial or dismissal of the remaining three indictments. Two of them arising out of the killing of his brother and sister were dismissed on February 13, and the third involving the death of his father was dismissed on December 7, 1942.

In May 1959 Dehler petitioned the district court for a writ of habeas corpus which resulted in an order of that court determining that he was unlawfully confined and directing that he be discharged. The order was issued on the grounds that the proper proceeding in

juvenile court had not been followed when he was indicted in 1941 and that by reason thereof the district court did not have jurisdiction to try the offense in January 1942. See, State ex rel. Knutson v. Jackson, 249 Minn. 246, 82 N. W. (2d) 234; State ex rel. Pett v. Jackson, 252 Minn. 418, 90 N. W. (2d) 219.

Upon his discharge Dehler was re-arrested by the sheriff of Morrison County and on May 20, 1959, was arraigned on the 1941 indictment charging him with the murder of his mother. At that arraignment Dehler entered a plea of not guilty. He also claimed former jeopardy as a defense because of the fact that on January 23, 1942, the jury returned a verdict of guilty on the 1941 indictment and he was then sentenced by the court. At the May 1959 arraignment he also moved the court to set aside, quash, and dismiss the 1941 indictment, which motion raised the questions presently certified to this court.

On June 8, 1959, the grand jury returned four separate indictments charging him with murder in the first degree of his mother, father, brother, and sister all committed on December 19, 1941. He was arraigned on these four separate indictments on June 10, 1959, at which time the same "not guilty" plea was entered as under the May 20, 1959, arraignment, and another motion to quash and dismiss the indictments was made. This motion was also included in the certification to this court.

Based on the holding in State v. Artz, 154 Minn. 290, 191 N. W. 605, the state, on oral argument, correctly withdrew from consideration the three indictments in connection with the death of Dehler's father, brother, and sister, since he had moved the court for either a dismissal or immediate trial under those indictments, which motions resulted in dismissal of the indictments by the district court in 1942. Therefore, we shall consider only the issues raised under the 1941 indictment arising out of the death of his mother.

The indictment of June 8, 1959, involving the death of Dehler's mother, may be disposed of on the basis of State ex rel. Dahlgren v. Riley, 109 Minn. 437, 438, 124 N. W. 13, where this court held as follows:

"* * * It is clear that the state could not prosecute relator twice for

the same offense, and, pending legally instituted proceeding for the purpose of his indictment and trial, could not arrest and restrain him of his liberty upon identically the same charge; and, though the pendency of another indictment upon the same charge is not a good plea in abatement (12 Cyc. 360), the fact that a previous warrant and preliminary hearing thereon had resulted in the holding of defendant to the grand jury, the warrant and proceedings thereon being in all things regular and valid, must necessarily bar a second proceeding upon the same charge and for the same purpose, until at least the first proceeding is determined and defendant has been discharged therefrom."

We believe the same principle is applicable to a situation where a valid and subsisting indictment is pending, as in the instant case. The December 1941 indictment in connection with his mother's death invalidates the June 1959 indictment charging the same offense for the same acts. As a result the validity of any future proceedings must be determined with reference to the 1941 indictment.

Dehler raises nine points as to why that indictment should be dismissed, which points were accepted by the district court as the questions to be certified to this court. Some of those questions are lengthy and repetitious and we believe they are summarized and incorporated in the following four basic questions:

(1) Does the district court have jurisdiction to presently arraign and try Dehler for the offense charged under the indictment returned December 31, 1941, arising out of the death of his mother and does the 1942 trial constitute former jeopardy?

(2) If the district court does have jurisdiction to now try him for that offense, is he thereby deprived of his right to a speedy trial by an impartial jury and his right to have compulsory process for obtaining witnesses in his favor, which rights are guaranteed by Minn. Const. art. 1, § 6?

(3) Would any sentence rendered subsequent to this trial constitute cruel or unusual punishment, prohibited by Minn. Const. art. 1, § 5, in view of the fact that he has been tried for the offense by a court which lacked jurisdiction and pursuant thereto has been imprisoned approximately 18 years?

(4) Would he thereby be deprived of life, liberty, or property without due process of law, or denied equal protection of the law in violation of U. S. Const. Amend. XIV?

■ Dehler asserts that a new trial under that indictment would place him in double jeopardy in view of the fact that he was tried and sentenced for that same offense in January 1942.

In State ex rel. Knutson v. Jackson, *supra,* we held that the requirement of M. S. A. 260.08 concerning a hearing in juvenile court is jurisdictional and, where notice required by that section was not given, the juvenile court order for prosecution in district court was invalid; also that where the discharge is upon the ground that the court which tried the accused lacked jurisdiction, then the accused may subsequently be tried before a court of competent jurisdiction and upon a valid charge without being subject to double jeopardy. In the instant case Dehler was discharged on a writ of habeas corpus because there was a failure to comply with the proceedings established by the Juvenile Court Act, M. S. A. c. 260. Therefore, as in State ex rel. Knutson v. Jackson, *supra,* the district court which subsequently tried him in 1942 lacked jurisdiction.

In State ex rel. Pett v. Jackson, *supra,* we held again that where a juvenile of the age of 17 years was tried, convicted, and sentenced for the crime of first-degree murder by the district court without first having been submitted to the jurisdiction of the juvenile court pursuant to the Juvenile Court Act, the district court proceedings were invalid and he was entitled to be discharged subject to the right of the state to prosecute him in district court for the crime with which he was charged since upon his discharge he no longer had the status of a juvenile.

Although the import of these decisions seems clear to us, uncertainty as to their effect has arisen and clarification is in order. Under Minn. Const. art. 6, § 5, the district courts have original jurisdiction in all criminal cases. As we stated in State ex rel. Knutson v. Jackson (249 Minn. 250, 82 N. W. [2d] 237) "In our opinion the Juvenile Court Act does not deprive the district court of its criminal jurisdiction." Before it can exercise that jurisdiction, however, it must acquire jurisdiction over the person of the defendant.

In the enactment of the Juvenile Court Act the legislature created a requirement that the juvenile be brought before the juvenile court and that certain proceedings take place in that court before the district court can acquire jurisdiction over the person of the minor.

Prior to July 1, 1959, when a petition was filed under § 260.07, or the juvenile was transferred to the juvenile court from other courts under § 260.22, the juvenile court acquired jurisdiction over the person of the juvenile. After July 1, 1959, when a petition is filed under L. 1959, c. 685, § 17, or the juvenile is transferred to juvenile court from other courts under L. 1959, c. 685, § 14, the juvenile court acquires jurisdiction over the person of the offender. That court then may either retain jurisdiction or relinquish it by directing that the offender be prosecuted in district court. This could be done if he was *12 years of age or over* under § 260.21. However, under L. 1959, c. 685, § 16, he cannot be referred for prosecution in the district court unless the violation alleged was committed by the juvenile after becoming *14 years of age*. When jurisdiction is thus relinquished by the juvenile court, the district court may then acquire jurisdiction over the person of the offender and proceed in the same manner as if he were an adult.

Dehler contends that the Juvenile Court Act is in effect a statute of limitations upon prosecuting authorities. He argues that where proceedings are not taken against an offender until after he became 18 years of age, under § 260.22, or 21 years of age, under L. 1959, c. 685, § 2, subd. 9, and § 14, subd. 1, such an offender can never be prosecuted by the district court for that offense. He cites two cases in support of his contention. People v. Oliver, 1 N. Y. (2d) 152, 151 N. Y. S. (2d) 367, 134 N. E. (2d) 197; Johnson v. State, 18 N. J. 422, 114 A. (2d) 1. In both of those cases the accused had committed the offense at an age when under the law of that jurisdiction he was deemed incapable of committing a crime. Consequently, neither case is controlling here where, under § 610.08, all persons 12 years of age and over are presumed to be responsible for their acts and Dehler was 16 years old at the time of the commission of the alleged offense.

We believe it would be ridiculous to say that if a person of 16 or 17 years of age commits a murder and escapes detection or apprehension either on a warrant or indictment until after he reached 18 years of age, or 21 years under the recent changes, he could no longer be proceeded against in the juvenile court or tried by the district court. See, Scopillitti v. State, 41 Ohio App. 221, 180 N. E. 740.

Dehler's interpretation would be in violation of Minn. Const. art. 6, § 5, which gives the district court original jurisdiction in all criminal cases, and it would be unreasonable and absurd. The legislature does not intend a result that is absurd or in violation of the constitution. M. S. A. 645.17.

■ Therefore, we hold that under § 260.22, where an offense was committed prior to the time the accused reached 18 years, but his arraignment in municipal court or before a justice of the peace was not held until after he became 18, it was not necessary that the case be transferred to the juvenile court but it could be tried by the district court without proceedings being conducted in juvenile court. We also hold that under L. 1959, c. 685, § 2, subd. 9, and § 14, subd. 1, where a person is accused of violating a state or local law or ordinance, which violation occurred while under 18 years of age, but does not appear before a court for the offense until after he reaches 21 years, he may likewise be prosecuted in district court.

In the instant case the district court has jurisdiction to try Dehler under the 1941 indictment since upon his arraignment on May 20, 1959, he was over 18 years of age and no longer had the status of a juvenile, and the previous proceeding against him does not constitute former jeopardy because the court which tried him lacked jurisdiction. State ex rel. Pett v. Jackson, *supra*; Scopillitti v. State, *supra*.

■ We held in State v. Artz, 154 Minn. 290, 191 N. W. 605, that whether an accused is denied his right to a speedy trial is for the courts to decide. The right to a speedy trial is intended to avoid oppression and prevent delay by imposing upon the courts an obligation to proceed with reasonable dispatch in the trial of the criminal accusations. In State v. McTague, 173 Minn. 153, 154, 216 N. W. 787, 788, we held:

"* * * that these solicitous provisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. * * * There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights as a foundation for his application for a dismissal. The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of the criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived. The statute is a means of enforcing the constitutional provision. The spirit of the law is that the accused must go on record in the attitude of demanding a trial or resisting delay. If he does not do this he must be held, in law, to have waived the privilege. Until he has so acted the state is not called upon to establish the existence of the statutory 'good cause.' "

Under the record here Dehler did not assert any right arising out of the proceeding prior to his trial in 1942 until he petitioned for a writ of habeas corpus in May 1959 on the grounds that the district court lacked jurisdiction to try him in 1942 because of an irregularity in the proceeding in the juvenile court. It is our opinion under the above cited authority and the facts and circumstances here that he has waived his right.

Dehler cited a number of cases in which the accused was held to have been deprived of his right to a speedy trial. Petition of Provoo, 17 F. R. D. 183, 203; Williams v. United States, 102 App. D. C. 51, 250 F. (2d) 19; United States v. Barnes (S. D. Cal.) 175 F. Supp. 60.

In the Barnes and Provoo cases, the defendants had asserted lack of jurisdiction or demanded an immediate trial. In all three cases the fact that the prosecuting authority had exercised a deliberate choice in not proceeding to trial had a bearing on whether or not defendants had been deprived of a speedy trial. We take note also of Pollard v. United States, 352 U. S. 354, 361, 77 S. Ct. 481, 486, 1 L. ed. (2d) 393, 399, where the court stated:

"Whether delay in completing a prosecution such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive. It was not here. It was accidental and was promptly remedied when discovered."

In the case at bar we do not have a situation where the delay was purposeful or oppressive; rather we have a contrary situation and the right has been waived by a failure to demand a new trial.

Dehler further asserts that whether or not a defendant is deprived of his right to a speedy trial is determined by whether or not he would now be prejudiced to be tried again and cites State v. Le Flohic, 127 Minn. 505, 506, 150 N. W. 171. In that case this court stated a number of reasons why the defendant had not been deprived of a speedy trial, one being: "No prejudice was suggested because of the delay."

■ Dehler contends he will be prejudiced because he is now deprived of other specific rights guaranteed by Minn. Const. art. 1, § 6. First, that he cannot now have a trial by an impartial jury because the case received wide publicity and because newsmen were allowed to be in the court room in violation of § 636.08; that it is common knowledge among Minnesota citizens that he was found guilty of murder in the first degree; and therefore, the public is now so biased and prejudiced that there can be no place in the state where an impartial trial can be had.

The United States Supreme Court, interpreting U. S. Const. Amend. VI, in Dennis v. United States, 339 U. S. 162, 172, 70 S. Ct. 519, 523, 95 L. ed. 734, 742, stated:

"* * * Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."

We do not believe that the publicity would by itself preclude an impartial jury anywhere in the state, particularly in view of the length of time which has passed since the commission of the alleged offense. See, United States v. Hoffa (S. D. N. Y.) 156 F. Supp. 495.

■ Dehler also contends he is now prejudiced because his witnesses have now moved out of the state and he will thereby be deprived of his right guaranteed by Minn. Const. art. 1, § 6, "to have compulsory process for obtaining witnesses in his favor."

The state asserts that he is not deprived of this right because § 611.08 provides that in a criminal action depositions of witnesses on behalf of the prisoner are allowed to be taken in the same manner as in civil actions.

Compulsory process for witnesses in favor of an accused as provided in the constitution vests a right which was not enjoyed at common law. The purpose of the right is to cure the defect of the common law by giving to the defendant in a criminal prosecution the same right that was possessed by both parties in civil cases and by the prosecution in criminal cases. 8 Wigmore, Evidence (3 ed.) § 2191; State ex rel. Gladden v. Lonergan, 201 Ore. 163, 269 P. (2d) 491.

Apparently the precise question has not been decided under the Federal Constitution. As near as can be determined it was presented in Gillars v. United States, 87 App. D. C. 16, 182 F. (2d) 962, but undecided because the witnesses were actually available for whom process was desired even though process would have been ineffective. The court stated (87 App. D. C. 32, 182 F. [2d] 978):

"The serious constitutional difficulty which might arise by reason of the absence of compulsory process to aid an accused who has been involuntarily transported to the United States for trial, far removed from the vicinity of the acts charged, is not presented for decision."

In State ex rel. Gladden v. Lonergan, *supra,* the Oregon court indicated that the right to the personal appearance of witnesses under U. S. Const. Amend. VI only extended to witnesses against the accused because it states, "the accused shall enjoy the right * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor." Minn. Const. art. 1, § 6, contains the same language.

We agree that the right of confrontation extends only to witnesses against the accused. When personal appearance of witnesses on be-

half of the accused is unavailable his rights are not violated where the testimony can be received by deposition.

■ Dehler also claims he would be prejudiced, because due to the lapse of time it is more difficult to prove his main defense, i. e., insanity. He cites Williams v. United States, 102 App. D. C. 51, 54, 250 F. (2d) 19, 22, where the court stated:

"When prosecution is delayed because of the accused's mental incapacity to stand trial, the difficulty of determining whether the accused was mentally responsible at the time of the crime is increased. Passage of time makes proof of any fact more difficult. When the fact at issue is as subtle as a mental state, the difficulty is immeasurably enhanced. Courts must on occasion risk the increased difficulty of proof. But the interest of justice requires that there be no difficulty which is reasonably avoidable."

The facts in that case are quite different from the instant case. There, (102 App. D. C. 56, 250 F. [2d] 24) "the Government not only failed to take any steps to ascertain the facts which would determine appellant's mental condition as it bore upon guilt or innocence, but resisted every defense attempt to produce those facts." Clearly this is not the situation in the case at bar.

It is the duty of the defendant, in the first instance, to minimize the difficulty of proving his mental state at the time of the commission of the crime. Williams v. United States, *supra.*

The greater difficulty of proving insanity after a lapse of 18 years under the circumstances could not have been reasonably avoided other than by an earlier assertion by Dehler that the district court lacked jurisdiction to try him. We do not believe under these circumstances Dehler has been prejudiced to the extent of being denied his right to a speedy trial.

■ Dehler further contends that he will be prejudiced because any sentence rendered pursuant to a verdict at a subsequent trial would inflict cruel and unusual punishment upon him in violation of his rights guaranteed by Minn. Const. art. 1, § 5. Dehler reasons that under § 637.06 he had become eligible for parole, having served 25 years

less the diminution which he would be allowed for good conduct; that if convicted again he will be required to serve another 25 years less allowance for good conduct before he will be eligible for parole.

We do not regard this assertion as convincing due to § 631.49, which provides that a person so convicted shall have credit for all time earned in diminution of sentence under § 640.53. We feel it is the intent of § 631.49 to credit one who is convicted in a second trial with the time already served for the purpose of computing eligibility for parole under § 637.06 even though the first sentence be for life.

■ We do not agree that because Dehler may be tried again he will be deprived of due process or equal protection of the law under U. S. Const. Amend. XIV.

He contends that he has been deprived of his right to proceedings in juvenile court because of the improper construction of the Juvenile Court Act in 1941. We do not believe that being tried now in district court deprives him of the equal protection of the law where he is treated as others similarly situated and has every right to appeal for redress if error is committed on the subsequent trial. 12 Am. Jur., Constitutional Law, § 470; 16A C. J. S., Constitutional Law, § 502.

Furthermore, as stated previously, nowhere do we find that Dehler objected to the proceedings until 1959. This court has held that any constitutional or statutory right may be waived if not against public policy. State ex rel. Shelby v. Rigg, 255 Minn. 356, 96 N. W. (2d) 886.

Nor do we think because Dehler may now be subject to prosecution under the 1941 indictment that he will be deprived of due process of law. Under the record here, as the law is established by the decisions of United States Supreme Court,[1] we do not believe that he has been deprived of that degree of fundamental fairness essential to the very concept of justice. Mooney v. Holohan, 294 U. S. 103, 55 S. Ct. 340, 79 L. ed. 791; Pyle v. State, 317 U. S. 213, 63 S. Ct. 177, 87 L. ed. 214; Curran v. State (D. Del.) 154 F. Supp. 27, affirmed, (3 Cir.) 259 F. (2d) 707, certiorari denied, 358 U. S. 948, 79 S. Ct. 355, 3 L. ed. (2d) 353.

---

[1]Nerlund v. Schiavone, 250 Minn. 160, 84 N. W. (2d) 61.

The questions certified are answered by the foregoing opinion and the cause is remanded.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.