STATE v. RICHARD EDWARD DEHLER.*

115 N. W. (2d) 358.

March 16, 1962—No. 38,378.

*Certiorari denied, 371 U. S. —, 83 S. Ct. 87, — L.ed. (2d) —.

*T. Eugene Thompson,* for appellant.

*Walter F. Mondale,* Attorney General, and *Attell P. Felix,* County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant appeals from a judgment of conviction of the crime of murder in the second degree in the District Court of Morrison County on the grounds that (1) certain of his constitutional rights were denied; (2) the court erred in denying his motion for change of venue; and (3) the court erred in denying his motion made after a sentence of life imprisonment was imposed to permit withdrawal of a plea of guilty to the crime of murder in the second degree and to accept plea of not guilty thereto.

On December 30, 1941, defendant was indicted by the grand jury of Morrison County for murder in the first degree in the death of Regina Dehler, his mother. On January 23, 1942, after a plea of not guilty and trial, the jury returned a verdict of guilty and defendant was sentenced to life imprisonment.

In May 1959, defendant was released on habeas corpus to stand trial again on the indictment described on the ground that in the first proceedings thereunder his rights as a juvenile had been denied. On May 20, 1959, he was arraigned under such indictment and entered a plea of not guilty and former jeopardy as a defense thereto. He subsequently moved for an order quashing and dismissing the indictment.

On June 8, 1959, the grand jury of Morrison County returned four separate indictments charging defendant with murder in the first degree in the deaths of Regina Dehler, August Benedict Dehler, Kenneth Dehler, and Anna Mae Dehler, on December 19, 1941. On June 10, 1959, he was arraigned on these four indictments and entered a plea of not guilty to all of them. He also moved for an order quashing and dismissing these indictments on the same grounds as those specified in the motion made with reference to the 1941 indictment.

On June 10, 1959, the District Court of Morrison County certified that the questions raised in all such motions were so important and

doubtful as to require the decision of the supreme court pursuant to Minn. St. 632.10. In its opinion with respect thereto, State v. Dehler, 257 Minn. 549, 102 N. W. (2d) 696, this court determined such questions as follows:

(1) The District Court of Morrison County had jurisdiction to arraign and try defendant for the offense charged under the indictment returned December 30, 1941;

(2) Where the offense was committed prior to the time defendant was 18 years of age, but his arraignment was not until after he became 18, the case could be tried in the district court without any preliminary proceedings in juvenile court;

(3) The previous trial and conviction in 1942 would not constitute former jeopardy since the court which tried defendant at that time lacked jurisdiction and defendant not having asserted denial of his rights until May 1959 had waived any right he might otherwise have had to a speedy trial;

(4) Defendant was not prejudiced in the second trial because certain witnesses had removed from the state in that under § 611.08 depositions of absent witnesses for defendant may be taken as in civil actions;

(5) Defendant was not prejudiced as to his defense of insanity by lapse of time in that it had been his duty in the first instance to prove his mental state at the time of the commission of the crime;

(6) Defendant upon conviction would not be required to serve an additional term without allowance of credit for time served and good conduct earned in view of § 631.49, which provides that such credit be given in diminution of a sentence;

(7) Defendant was not deprived of due process or equal protection under the Federal constitution, any such rights having been waived by his failure to raise such constitutional question until 1959.

Following this decision, defendant moved the District Court of Morrison County for a change of venue. This was denied. By order dated August 29, 1960, trial under the original indictment of December 30, 1941, was set for November 14, 1960. On November 15, 1960, defendant renewed all previous motions to quash the indictment (more partic-

ularly set forth in State v. Dehler, *supra*), and such motions were again denied. Defendant at that time refused to enter a plea and accordingly the court entered a plea of not guilty on his behalf. Defendant by his counsel then offered to plead guilty to the crime of murder in the third degree under the indictment dated December 30, 1941. Subsequently, this offer was withdrawn and by agreement with counsel defendant's trial was set for December 5, 1960. On that date a jury was impaneled and sworn, and on December 12, 1960, defendant appeared with counsel and formally entered a plea of guilty to murder in the second degree under the indictment of December 30, 1941. The court accepted this plea and the jury was discharged. On December 19, 1960, defendant moved that the court sentence him pursuant to § 619.08, as amended by L. 1959, c. 683, which became effective on April 24, 1959. The amendment changed the penalty for murder in the second degree from life imprisonment, as it was at the time of defendant's commission of the crime, to imprisonment for not less than 15 nor more than 40 years. As amended, § 619.08 further provides:

"All offenses committed, and all penalties and punishments incurred therefor, prior to the taking effect hereof, shall be prosecuted and punished in the same manner and with the same effect as if this amendment had not been passed."

The court denied the motion and sentenced defendant to life imprisonment. Defendant then moved that he be permitted to withdraw his plea of guilty to murder in the second degree and to stand trial on the indictment of December 30, 1941. This motion was likewise denied.[1]

---

[1]The record indicates that at the time of these proceedings the following occurred (December 12, 1960):

"Mr. Thompson [counsel for defendant]: Your Honor, may the record note that defendant is present in court and is represented by his attorney * * * and is ready for trial, and that the State is represented by Mr. Attell Felix and is ready for trial. * * * at this time * * * the defendant requests the Court to accept a plea to Second Degree pursuant to the Indictment before this Court—Second Degree Murder, a plea of guilty.

\* \* \* \* \*

"Mr. Felix: If it please the Court, it is my understanding under the

In support of his motion for change of venue, defendant relied upon certain radio newscasts and newspaper publications in Morrison County, most of which were published in 1942, and none of which expressed any opinion as to his guilt or innocence.

---

law that for a crime committed at the date that this was committed that the punishment for Second Degree Murder is similar to that for First Degree Murder, to-wit: life imprisonment; and with that understanding I will recommend that the Court accept the plea of the defendant to Murder in the Second Degree in lieu of that of Murder in the First Degree, and recommend that the Court impose that sentence, to-wit: life imprisonment.

"The Court: Is there any rejoinder, Mr. Thompson?

"Mr. Thompson: Not at this time, Your Honor. I would like the Court to either accept or deny our offer to plead guilty.

"The Court: Well, as I understand it, we were ready to proceed to trial at 9:30 and it is now ten minutes after 10:00; and during this period of time you have conferred with the defendant relative to this matter?

"Mr. Thompson: I have, Your Honor.

"The Court: And you are satisfied, are you, that he understands the nature of the proceedings and the consequences, the possible consequences of this plea?

"Mr. Thompson: Yes, I do, Your Honor.

"The Court: And I'm not sure that I fully understood the County Attorney's remarks; but there is no agreement or understanding here; this plea, if made, is voluntarily made?

"Mr. Thompson: It is voluntarily made, Your Honor.

"The Court: Your position with reference to what the punishment may be is different or the same as the County Attorney's?

"Mr. Thompson: If the Court please, if the Court accepts this plea, I wish the Court pursuant to the statute to allow me to introduce certain factors pursuant to the plea itself, at which time I will make any statement I feel applies to this matter.

"The Court: Can you indicate to me what the defendant's position is with reference to the punishment?

"Mr. Thompson: That goes to the punishment, not to the plea of guilty. It is the offer to plead that is now before the Court.

"The Court: It is the State's position, Mr. County Attorney, that the punishment is the same for First Degree Murder or Second Degree Murder?

"Mr. Felix: Well, Your Honor, at the last session of the Legislature a law was passed changing the punishment for Murder in the Second Degree,

On appeal defendant renews the contentions made in the prior proceedings in this court and urges further that the trial court erred (1) in denying his motion for change of venue; (2) in failing to advise him

---

but in my opinion it specifically exempted crimes committed prior to the passage of the Act; so it is my understanding of the law that for a crime committed in December of 1941, the crime of Murder in the Second Degree, the punishment would be life regardless of when he is sentenced.

"The Court: It is that understanding that prompts you to not oppose permitting the defendant to plead or to accept his plea to a lesser degree of this crime charged in the Indictment, is that right?

"Mr. Felix: Yes, Your Honor.

"The Court: But am I also clear in my understanding that you agree, from the testimony previously and from an examination of the facts, that the crime of Murder in the Second Degree would be justified by the evidence?

"Mr. Felix: It is pretty difficult to answer that, Your Honor, but I will say I have read this record very carefully and the Court would be justified in submitting both degrees and there would be evidence to substantiate either one.

"The Court: Very well; the Court then will grant the request and will accept a plea to Murder in the Second Degree, a lesser degree of the crime charged in the Indictment. Is the defendant now ready to enter his plea?

"Mr. Thompson: Yes, Your Honor.

\* \* \* \* \*

"The Court: The question then recurs: how, Mr. Dehler, do you plead to the crime of Murder in the Second Degree, a lesser degree of the crime charged in the Indictment, namely, Murder in the First Degree?

"Defendant Richard Edward Dehler: I plead guilty, Your Honor.

"The Court: A plea of guilty therefore will be entered, and the Court now adjudicates you guilty of the crime of Murder in the Second Degree, \* \* \*.

\* \* \* \* \*

"The Court: \* \* \* We will then recess the proceedings until 1:30, at which time we will hear arguments concerning what the sentence should be.

\* \* \* \* \*

"(Whereupon Mr. Thompson, followed by Mr. Felix, argued further to the Court as to whether a life sentence or a 15 to 40 year sentence should apply herein.)

\* \* \* \* \*

that the consequences of his plea of guilty to murder in the second degree would be a sentence of life imprisonment; and (3) in not permitting him to withdraw his plea of guilty.

■ As to the various motions of defendant to quash or dismiss the proceedings in the second trial and all matters pertaining thereto on the

---

"The Court: * * * To me it isn't a question of what the defendant wants to obtain here, what sentence would be satisfactory to the defendant. I know that he would desire to have the 15 to 40 years. Or what the State wants; and I well know that the State believes and wants and thinks it is appropriate that a life sentence be imposed * * *.

\*    \*    \*    \*    \*

"Mr. Thompson: Your Honor, at this time the defendant requests that the matter of sentencing be postponed until Wednesday, the 21st of December, to allow counsel to try to make a more persuasive argument at that time. * * *

\*    \*    \*    \*    \*

"The Court: Well, I can see no particular prejudice to either side in granting the request, and therefore the request is granted. The matter will be recessed until 1:30, December 21st."

On December 21, 1960, proceedings in the courtroom were as follows:

"The Court: * * * The Court has received the additional written argument of the defendant and the Court has received a written argument just immediately—a reply just before we started here of the State. I have read the written memorandum of the defendant, but I haven't read the reply that the State makes. Is there any procedure that you would like to follow?

"Mr. Felix: I will renew the motion made previously by the State that the defendant now be sentenced pursuant to his plea of guilty for the crime of Murder in the Second Degree.

"The Court: Is there any additional argument that you want to make, Mr. Thompson?

"Mr. Thompson: No, Your Honor. My only final argument is contained in the written memorandum on file with the Court.

\*    \*    \*    \*    \*

"Mr. Thompson: * * * the written memorandum * * * does raise a new interpretation for the Court's consideration. The State is clearly relying on the statutory interpretation of the word 'shall' when it says it is mandatory, leaving no possibility of choice to this Court. * * * Even though the statute to the contrary might give that impression, it is merely directive, it is merely for the Court's suggestion, and it can be either manda-

grounds that they constituted violation of his state and Federal constitutional rights and as to the court's denial of such motions, we adhere to our previous opinion, State v. Dehler, *supra,* for the reasons stated therein and affirm the orders made in reliance thereon.

---

tory or permissive regardless of what that statute says. And therefore, if it can be either, I respectfully submit to the Court that it must be permissive, in line with other rules of criminal law interpretation. And if it is permissive, then it provides an election. If it provides an election, it can only provide an election to the defendant; and the defendant elects to be sentenced to the 40 year sentence. That's the argument, Your Honor.

\* \* \* \* \* .

"The Court: Is the defendant now ready to have the sentence entered?

"Mr. Thompson: The defendant is ready, Your Honor.

"Mr. Felix: The State is ready, Your Honor.

"The Court: Very well; you may stand, Mr. Dehler, and the Clerk will enter this sentence:

### "Sentence

"It is the judgment and sentence of the Court that you, Richard Edward Dehler, as punishment for the crime of Murder in the Second Degree, a lesser degree of the crime of Murder in the First Degree, of which you have been duly convicted by your own plea of guilty in this Court, be committed to and confined at hard labor in the State Prison at Stillwater, Minnesota, for the term of your natural life.

"It Is Further Ordered that the defendant shall have credit for time served for all of the days he has been incarcerated in the County Jail of Morrison County awaiting this proceeding, as the record shall show, such credit to be deducted from the sentence imposed herein for any purpose authorized by law.

\* \* \* \* \*

"Mr. Thompson: Does the Court wish to give him credit for the time he has actually served in Stillwater and St. Cloud as well?

"The Court: It is the Court's intention by this sentence that the statute gives him such credit, but if there is any doubt about it, it would be the Court's understanding that he shall have all credit for time previously served under this conviction as the statute authorizes. Does that make it clear?

"Mr. Thompson: Yes. That's together with the time actually served in the County Jail?

"The Court: Together with the time actually served in the County Jail.

"Mr. Thompson: And good time earned, Your Honor?

■ With reference to defendant's motion for change of venue based upon his contention that local publicity and prejudice prevented the possibility of a fair and impartial trial, we can but restate the well-established principle that determination of such matters ordinarily rests within the sound discretion of the trial court, and that where, as here,

---

"The Court: I have included that language in the credit, and that's the intention. It is my understanding that the only purpose for which good time earned is used is for the purpose of determining release under parole.

"Mr. Thompson: That's correct, Your Honor.

"The Court: It is my further understanding that under the time previously served at St. Cloud and Stillwater, and also with the time served in the Morrison County Jail, and with the good time earned thereon, the defendant now is eligible for release by parole from the Adult Commission, the Commissioner of Corrections, Adult Division, and the purpose here is to make clear that he gets credit for the time served here in the County Jail; and the Court does that simply because his time spent in the County Jail is not due to anything over which he had control * * *.

"* * * with reference to the ruling of the Court on this matter of the proper sentence, the sentence is imposed because the Court believes and has no doubt but that the Legislature intended that this sentence shall be imposed. It is absolutely my abiding conviction that this Court has no latitude to impose any other sentence but that of life imprisonment, and that it is necessary and compelled under the law; and the Court rejects completely the theory that the defendant expresses here as to what the legislative intention was in using the saving language. It would seem to me that the modifying language is conjunctive. It would seem further to me that if the Legislature intended to have the rule apply that defendant contends for, it could easily have done so by providing that all convictions after the effective date shall be punished under the reduced term. * * *

* * * * *

"One further thing disturbs me, and that is the matter of this memorandum which counsel for defendant filed, and wherein the language is used that there is a request to withdraw the plea of guilty to Murder in the Second Degree. I now want to know whether or not that motion is before the Court.

"Mr. Thompson: Yes, Your Honor. The motion was before the Court when I filed it. It is still before the Court.

"The Court: And it is based upon what?

"Mr. Thompson: Based upon a mistake of fact as to the punishment

there is an absence of any substantial showing that there was an abuse of such discretion, this court will not interfere. State v. Waddell, 187 Minn. 191, 245 N. W. 140; State v. Shepard, 171 Minn. 414, 214 N. W. 280; State v. Nelson, 91 Minn. 143, 97 N. W. 652.

---

to be incurred from the plea of guilty, and upon the Court's failure to advise the defendant prior to the acceptance of his plea of guilty as to what the punishment would be. And as authority therefor I cite to the Court 110 A. L. R. 228 and cases cited therein.

"The Court: Now, I want to understand this clearly. You say that the defendant was under a mistake of fact, a mistake of fact on the part of the defendant as to the consequences of a plea of guilty to Murder in the Second Degree. Just what do you mean by that?

"Mr. Thompson: The consequences being the punishment to be imposed upon a plea of guilty.

"The Court: Do you mean to say to me that the defendant did not know before he entered his plea that he could get life imprisonment?

"Mr. Thompson: The defendant was advised by me, Your Honor, that it was my interpretation of the law that the maximum sentence that could be imposed would be forty years, that that would be the only lawful sentence that could be imposed. That still is my opinion and that still is my advice.

"The Court: Do you say to me that he was not aware and you did not advise him that you could be wrong and that the Court might impose life?

"Mr. Thompson: I advised him as to what I believed the maximum possible sentence could be.

"The Court: My question is simple and direct. Did you not advise him that it was possible that he could get life imprisonment?

\*    \*    \*    \*    \*

"Mr. Thompson: I now conclude that the duty was imposed upon the Court to advise the defendant, the Court accepting his plea, as to what the consequences of his plea was.

"The Court: And under what authority?

"Mr. Thompson: 110 A. L. R. 228.

\*    \*    \*    \*    \*

"The Court: Now, Mr. Dehler, you understand, do you not, that it is your right to answer any such questions as you desire to answer, that you can refuse to answer any questions put to you, and that the purpose of this inquiry is simply to determine what your understanding was just prior

■ Defendant's contention that he was entitled to a sentence imposed under § 619.08, as amended by L. 1959, c. 683, we feel is without merit. Under the provisions of this section prior to the 1959 amendment, the penalty for murder in the second degree was life imprisonment. The amendment provided that this penalty be changed to imprisonment for not less than 15 years nor more than 40 years. Opposed to defendant's contention is the clear language of the amendment that "[a]ll offenses committed, and all penalties and punishments incurred therefor, prior to the taking effect hereof, shall be prosecuted and punished in the same manner and with the same effect as if this amendment had not been passed." It is difficult to conceive any language which could more clearly express the legislative in-

---

to the time that you entered your plea of guilty to Second Degree; do you understand that?

"The Defendant: Yes.

\* \* \* \* \*

"Examination by the Court:

"Q. Richard, did you have in mind that the Court might impose a life sentence and disagree with your counsel's and your own understanding?

"A. Yes.

"Q. You knew, therefore, that that was a possibility?

"A. That's right.

"Q. Although you believe with Mr. Thompson that that is an illegal sentence?

"A. That's right.

\* \* \* \* \*

"Q. You don't mean to tell me that you were in any way misled so as to have your rights prejudiced about standing trial or not standing trial, you weren't misled by anything that anyone did here, that there was no likelihood whatsoever that you would get life imprisonment; you don't claim being misled by anything the Court did, do you?

"A. Not misled but just—I thought it would be the easiest way of ending the whole matter and save a lot of grief for everybody, and that I couldn't gain anything by going through trial.

"Q. And you knew that there was a possibility that, contrary to your understanding and your counsel's understanding of what the law is, the Court could impose a life sentence?

"A. Yes."

tent that, as to offenses committed prior to the amendment, the law in effect as of the date of such offense should govern. Defendant's contention that the word "shall," as used therein, should be construed as permissive rather than mandatory is contrary not only to the intent expressed in the section but likewise opposed to § 645.44, subd. 16, which provides that when the word "shall" is used in a statute the term is mandatory. We cannot escape the conclusion that the mandatory exception to the application of the amended statute be given effect. Cashman v. Hedberg, 215 Minn. 463, 10 N. W. (2d) 388; State ex rel. Laurisch v. Pohl, 214 Minn. 221, 8 N. W. (2d) 227. It would follow that, in imposing upon defendant a sentence of life imprisonment for murder in the second degree, the trial court correctly construed § 619.08, as amended.

■ We find no statute and no decisions of this court which would require a trial court in criminal proceedings to advise a defendant in advance as to the penalty intended to be imposed upon a plea of guilty to murder in the second degree. Further, in the instant case we find nothing in the record to indicate that the court was requested to do this. Normal procedure, where discretion is involved in imposing a penalty, usually requires postponement of sentence until after the plea of guilty, and after the report of any probationary officers upon whom is placed the responsibility of investigating and reporting as to a defendant's background, character, prior convictions, and like matters which ordinarily affect the sentence the court will ultimately impose. Defendant here, while not advised as to the penalty, certainly was aware that the court at no time had indicated either to him or to his counsel that it would be guided by the statute as amended. While his counsel argued that the lesser penalty should be imposed, defendant was aware that counsel for the state vigorously opposed this idea and made it clear to defendant and to his counsel, as well as to the court, that in his opinion the penalty as it existed prior to the amendment was mandatory. Under such circumstances, we find no error in the procedure outlined.

We disagree with defendant's assertion that here the refusal of the trial court to permit him to withdraw his plea of guilty constituted reversible error. Under § 630.29, it is provided that at any time before

judgment the court may permit a plea of "guilty" to be withdrawn and a plea of "not guilty" substituted therefor. Under this statute we have held that whether an accused should be permitted to withdraw a plea of guilty before judgment rests largely in the discretion of the trial court, and that its action in this respect will not be reversed unless it clearly appears that there has been an abuse of such discretion. State v. Harding, 260 Minn. 464, 110 N. W. (2d) 463; State v. Jones, 234 Minn. 438, 48 N. W. (2d) 662. Here we find no abuse of discretion. As has been indicated above, defendant at all times was aware of the possible consequences of his plea. He knew the state's contention that the provisions of the amendment did not apply to crimes committed prior to its enactment, and since, as we have held above, no obligation rested upon the court to advise him as to the exact penalty that would be imposed upon his plea of guilty, we must conclude that the trial court did not abuse its discretionary function in denying defendant's request to withdraw his guilty plea.

Affirmed.

### ON PETITION FOR REARGUMENT.

On May 18, 1962, the following opinion was filed:

PER CURIAM.

The opinion herein is modified to include the following in accordance with defendant's petition for reargument:

In determining that none of defendant's constitutional rights to due process was denied him in the proceedings above described, we have given full consideration to the provisions of the Fourteenth Amendment to the Constitution of the United States (U. S. Const. Amend. XIV) as well as to the applicable provisions of the Constitution of the State of Minnesota.

Petition for reargument denied.

MR. JUSTICE ROGOSHESKE, having presided at the trial, took no part in the consideration or decision of this case.